636 A.2d 463

**Derrick Wenzell SIMMONS**

v.

**STATE of Maryland.**

**No. 103, Sept. Term, 1993.**

Court of Appeals of Maryland.

Jan. 28, 1994.

Reconsideration Denied March 4, 1994.

548

Leonard R. Stamm (Goldstein & Stamm, P.A., all on brief), Greenbelt (Gary A. Courtois, Upper Marlboro, on brief), for appellant.

Thomas K. Clancy, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., RODOWSKY, CHASANOW, KARWACKI, ROBERT B. BELL and RAKER, JJ., CHARLES E. ORTH, Jr., Judge (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge (Retired), Specially Assigned.

## I

On 18 May 1990 a gaggle of men invaded the home of Misharah Donise Coleman and her family in Prince George's County, Maryland and committed the crime of robbery with a deadly weapon and various other offenses. There was evidence that the men forced one of the victims to open a safe and took $1,100 in cash and jewelry valued at $2,800 to $3,000. The investigation by the police pointed to Marquette James Coley as one of the gang involved. He was arrested and taken to the Criminal Investigations Division of the Prince George's County Police Department where he was interrogated on 31 May 1990 by Detective Kenneth O'Berry. O'Berry obtained the following statement from Coley:

> May 18, I was at a Graduation party in the neighborhood of Indian Queens with Rodney Smith and Chuck Holton. In another car was Kevin Sumpter, Valeo and Derrick Simmons. We had just got [to] the party when it was ending. So Me, Rodney, and Chuck were on our way home until we saw my buddy James Stephens. James was coming from around his girlfriend house and said, it was a party somewhere around her house. So Me and Chuck got out the car with Rodney and got in the car with James. We went looking for the party but could not find the Party. So we came over my house and sat in the front and talked for a little while.

This narrative was in Coley's handwriting. Then O'Berry posed particular questions to Coley:

(Q) Who's [sic] party was it?

(A) I'm not sure, I think maybe Dawn

(Q) What time was the party?

(A) We got there at about 12:00 A.M.

(Q) Where is Indian Queens?

(A) Near Oxon Hill Middle School.

(Q) Who attended the party with you?

(A) Me Rodney Smith, Chuck Holton, In another car was Kevin ~~Vale~~ Sumpter, Derrick Simmons, and Valeo (unknown last name).

(Q) Do you know anything about a robbery which occurred on 5–18–90 at ~~7287 Woodhollow~~ 211 N. Huron Dr. Forest Heights?

(A) I knocked on the door, she answered the door, I looked down the steps, it was a "Q", they came in. I sat at the door looking out, they said come on.

(Q) Who was with you?

(A) Me, Derrick Simmons and Chuck Holton and another person, I don't want to tell you his name.

(Q) Did you take anything?

(A) No

(Q) Did the others take anything?

(A) Not that I know of

(Q) Who had guns?

(A) Derrick Simmons, black automatic the other dude had a black automatic

(Q) Who knew the girl who lived on ~~Woodhollow~~ N. Huron

(A) I don't know, they were telling me they needed me to do something for them, she was holding the money for her boyfriend J.J. or J.R., he's a drug dealer he's in jail.

(Q) Who drove?

(A) Chuck Holton, black Horizon or something like that.

(Q) Describe the girl?

(A) B/F, 503–504, 120 lbs, 16–17 yrs old, med complex

(Q) When you knocked on the door did you say anything?

(A) No, she didn't ask who it was, I figured it was her since she was a young girl.

(Q) Who else was in the house?

(A) two ladies and a kid

(Q) Describe the ladies?

(A) B/F's, they pushed them in the room with her.

(Q) Do you know where this house is located?

(A) Somewhere off Indian Head Hway

(Q) Why won't you tell me who the 4th guy is?

(A) I don't want to snitch on someone you already know the other guys and I don't want to snitch on anyone.

(Q) Is the part about the party correct?

(A) yes, we went to the party after the robbery.

(Q) So who went to the party?

(A) Me, Rodney, Chuck, Kevin, Valeo and Derrick.

(Q) Where did you met up with these other guys?

(A) 7-11 at Allentown Rd.

(Q) Who else was driving?

(A) Kevin Sumpter, black 300 ZX

(Q) Who went in Kevin's car?

(A) Valeo & Derrick

(Q) What time did you go to the party?

(A) around 11:00 or 12:00

(Q) How long after the robbery?

(A) About 30 minutes

(Q) Earlier you said there was two ladies and a kid in the house. Did you mean these people and the young girl also?

(A) yes, two older ladies, the young girl and the kid.

(Q) Why did you take part in this robbery?

(A) it sounded easy, it was peer pressure, just knock on the door.

(Q) Have any promises or inducements been made to you to give this confession?

(A) No

(Q) Is this statement the entire truth?

(A) Yes

(Q) Is there anything else you would like to add?

(A) No

Coley initialed each answer as well as each correction and signed each of the six pages which comprised the statement.

On 19 June 1990, the Grand Jury of the State of Maryland for the body of Prince George's County returned a "True Bill" against Coley, Derrick Simmons, and Wendell Bernard Jackson II. Pursuant thereto, an Assistant State's Attorney for Prince George's County filed an eleven count indictment the next day, jointly charging Coley, Simmons, and Jackson with armed robbery and related offenses.

## II

Coley's statement is the heart of the appeal before us. Simmons was separately tried by a jury in the Circuit Court for Prince George's County and found guilty of robbery with a deadly weapon, the use of a handgun in the commission of a felony, robbery, and burglary. He was duly sentenced and noted an appeal from the judgments. We granted certiorari on our own motion before decision by the Court of Special Appeals, 332 Md. 480, 632 A.2d 446.

During the course of the State's case at Simmons's trial, the prosecutor told the court at the bench that the State's next witness was Coley. It appeared that at a former trial of Simmons, which resulted in a hung jury, Coley refused to testify, even though at the time he had accepted a plea offer in exchange for his guilty plea, had been sentenced, and the period for appeal had expired. The judge presiding at the prior trial ordered him to testify and held him in contempt when he refused to comply. The prosecutor told the court that she had just spoken to Coley and he stated that he did not intend to testify. Therefore, she said, "what the State wants to do is to introduce into evidence the statement that was made by Mr. Coley at the time of his arrest." After a brief recess, it was decided to ascertain, out of the presence of the jury, if Coley would testify. Defense counsel said he did not object to this procedure but made clear his objection to the admission of the statement if Coley refused to testify. Coley's statement was marked as State's Exhibit No. 5 for identification.

While waiting for Coley to be returned to the courtroom, defense counsel stressed his objection to the admission of the statement. When Coley appeared, he refused even to take the oath much less testify. He declaimed: "I'm not taking an oath. I'm not going to testify." Threatened with being held in contempt for failure to take the oath, Coley said he had been all over that at the prior trial. He resisted strong pressure by the judge and despite repeated attempts to swear him refused to take the oath. During all this, counsel were fervidly arguing the issue. The judge finally said that the State could authenticate the statement. The jury was brought back in and O'Berry testified as to the obtaining of the statement. The next thing that happened was that the State rested and the defense moved for a judgment of acquittal. The motion was denied and the court recessed for the day.

The next day, defense counsel reminded the court that it had not ruled on the admission of the statement. The court allowed counsel to reargue the issue further. As it was apparent that the judge was going to admit the statement in evidence, defense counsel asked for a mistrial and if the motion was denied, counsel requested a motion to strike O'Berry's testimony. Both motions were denied. The judge indicated that he had intended to admit the statement the day before. But, the court said: "[S]o the record is mighty clear now, the State's Exhibit 5 is admitted."

## III

### A

The Confrontation Clause of the Sixth Amendment to the Constitution of the United States declares:

> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....

The Confrontation Clause of Article 21 of the Maryland Declaration of Rights proclaims:

That in all criminal prosecutions, every man hath a right ... to be confronted with the witnesses against him.... [1]

## B

The Supreme Court has accepted hearsay as

"testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."

*Lee v. Illinois,* 476 U.S. 530, 543 n. 4, 106 S.Ct. 2056, 2063 n. 4, 90 L.Ed.2d 514 (1986), quoting E. Cleary, *McCormick on Evidence* § 246, p. 584 (2d ed. 1972). Coley's statement, offered by the State as substantive evidence against Simmons, was hearsay. The basic rule is that hearsay is not admissible. If the language of the Confrontation Clauses were taken literally, any statement made by a declarant not at the trial would be excluded. *See Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). But the Supreme Court has consistently held that the Confrontation Clause "does not necessarily prohibit the admission of hearsay statements against a criminal defendant...." *Idaho v. Wright,* 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990). *See Lee v. Illinois,* 476 U.S. at 543–544, 106 S.Ct. at 2063–2064; *Roberts,* 448 U.S. at 63, 100 S.Ct. at 2537. The Supreme Court has declared that it cannot be seriously doubted that

---

**1.** The confrontation requirements of the Sixth Amendment are applicable to the states through the Fourteenth Amendment. *See Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Franklin v. State,* 239 Md. 645, 212 A.2d 279 (1965).

The Confrontation Clauses of the Sixth Amendment to the Constitution of the United States and Article 21 of the Maryland Declaration of Rights are in *pari materia. Craig v. State,* 322 Md. 418, 430, 588 A.2d 328 (1991).

"the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him."

*Lee,* 476 U.S. at 539, 106 S.Ct. at 2061, quoting *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). In *Roberts,* however, "the Court held that cross-examination of a hearsay declarant can be dispensed with when a party demonstrates: (1) the necessity of introducing the out-of-court statement, and (2) the out-of-court statement bears adequate indicia of reliability." *Chapman v. State,* 331 Md. 448, 455, 628 A.2d 676 (1993), citing to *Roberts,* 448 U.S. at 65–66, 100 S.Ct. at 2538–2540. *See Moon v. State,* 300 Md. 354, 367, 478 A.2d 695 (1984), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). The first prong of the *Roberts* approach was construed as requiring the showing of the unavailability of the declarant or a demonstration of unsuccessful good faith efforts to secure the declarant's presence. *Chapman,* 331 Md. at 467, 628 A.2d 676. Then, in *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), the Court declared:

*Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable.

*Id.* 475 U.S. at 394, 106 S.Ct. at 1125. It held that the unavailability of a conspirator need not be shown to admit a coconspirator's hearsay declaration made during the course of the conspiracy. *Id.* 475 U.S. at 399–400, 106 S.Ct. at 1128–1129. In *White v. Illinois,* —— U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the Court again indicated that the unavailability requirement established in *Roberts* does not apply to all forms of hearsay. *Id.* —— U.S. at ——, 112 S.Ct. at 741–742. The Court explained that "the Confrontation Clause does not require an initial showing of unavailability prior to admitting out-of-court statements which are spontaneous declarations or are made for the purposes of attaining medical diagnosis or treatment as substantive evidence for the State's case." *Chapman,* 331 Md. at 469–470, 628 A.2d 676, citing to *White,*

—— U.S. at ——, 112 S.Ct. at 743. Thus, *Chapman* concluded, "it appears that the Supreme Court has emphasized that *Roberts* contemplated a rule of necessity, not one of availability." 331 Md. at 470, 628 A.2d 676. So, in *Chapman,* we held that the unavailability of the makers of reliable business records was not a prerequisite for the admission of these records.

Where the rule of necessity has been satisfied, the second prong of the Roberts approach is triggered, namely, that the hearsay declaration be reliable. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. We pointed out in *Chapman,* 331 Md. at 457, 628 A.2d 676:

Where the hearsay in question falls within a "firmly rooted" hearsay exception "no independent inquiry is required. . . ." *Bourjaily v. United States,* 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 157 (1987).

## IV

### A

■ The objection of defense counsel to the admission of Coley's statement was on the grounds that it was hearsay and that it violated Simmons's right to confront the witnesses against him bestowed by the Sixth Amendment to the Constitution of the United States and Article 21 of the Maryland Declaration of Rights. The judge's ruling that the statement was admissible was based on the penal interest exception to the hearsay rule. He made no specific findings but "conclude[d] that the tests set forth in *Adkins* have been met. . . ." *Adkins v. State,* 72 Md.App. 493, 531 A.2d 699 (1987), *rev'd on other grounds,* 316 Md. 1, 557 A.2d 203 (1989), discussed the penal interest exception as recognized by the Supreme Court and this Court. *Id.,* 72 Md.App. at 502–504, 531 A.2d 699. *Adkins* referred to the test described in *State v. Standifur,* 310 Md. 3, 17, 526 A.2d 955 (1987) for the admissibility of a declaration against penal interest against both a hearsay and

Confrontation Clause objection. The trial judge believed that Coley's statement was indeed inculpatory and against Coley's penal interest and that a declaration against penal interest was a "well founded" hearsay exception thereby inferring reliability without more. The judge opined that, although the reasoning in *Adkins* was applicable to this case, Coley's statement was admissible "for more reasons than are set forth in ... *Adkins.*" Those additional reasons, the judge declared, arose because the court and the jury were involved in a search for the truth. He said:

> And the jury is entitled to hear relevant, probative information. In fact, it's necessary for the jury to hear relevant, probative information. For them not to hear it is a denial of the principles concerning the search for the truth.

Of course, the ascertainment of the truth is the alpha and omega of every criminal trial. But under our system of criminal justice, the search for the truth is not always the decisive criterion for admissibility of evidence and at times suffers some restraints. This is so when the evidence, although relevant and probative and tending to disclose the truth, infringes on personal rights. For example, when a confession, otherwise freely and voluntarily given and plainly relevant and probative, is inadmissible for the failure of the authorities to comply with the dictates of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Or when contraband, although certainly relevant and probative, is inadmissible because the search for it and the seizure of it offended the Fourth Amendment to the United States Constitution. The point is that although the consideration by the jury of Coley's statement may have helped the jurors determine Simmons's guilt or innocence that fact, as such, plays no part in the question of its admissibility. Rather, the password is the "reliability" of the hearsay declaration, not whether it is harmful or helpful.

## B

Before us, the State, in its brief and at oral argument, conceded that the penal interest exception to the hearsay rule

is not a firmly rooted one. It said: "The declaration against interest exception is a fairly recent exception to the hearsay rule," citing *Standifur,* 310 Md. at 9–10, 526 A.2d 955.[2]

> [W]here hearsay statements are admitted under an exception which is not considered "firmly rooted," then they are "presumptively unreliable and inadmissible for Confrontation Clause purposes" and must be excluded, at least absent a " 'showing of particularized guarantees of trustworthiness.' "

*Chapman,* 331 Md. at 457, 628 A.2d 676. *See Lee,* 476 U.S. at 543, 106 S.Ct. at 2063; *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539.

> These guarantees of trustworthiness must be such that the evidence is "at least as reliable as evidence admitted under a firmly rooted hearsay exception" so as to assure "that adversarial testing would add little to its reliability."

*Chapman,* 331 Md. at 457, 628 A.2d 676, quoting *Wright,* 497 U.S. at 821, 110 S.Ct. at 3149.

## C

### (1)

█ The prosecutor established that Coley was "unavailable." As we have seen, Coley was brought into the courtroom and although he was physically present and seated on the witness stand, he flatly refused to testify. Not subject to cross-examination, he was "unavailable" with respect to the hearsay exception and the Confrontation Clause. The rule of necessity was satisfied. *See California v. Green,* 399 U.S. 149, 168 n. 17, 90 S.Ct. 1930, 1940 n. 17, 26 L.Ed.2d 489 (1970); Fed.Rule Evid. 804(a)(1); 2 John William Strong, *McCormick on Evidence* § 253 (4th ed. 1992); *Lee,* 476 U.S. at 550–551, 106 S.Ct. at 2067 (Blackmun, J. dissenting).

---

**2.** The Supreme Court has indicated several classic hearsay exceptions that fall within the "firmly rooted" category. A declaration against penal interest is not one of them. *See Chapman v. State,* 331 Md. 448, 457 n. 3, 628 A.2d 676 (1993).

(2)

 Because the penal interest exception is not a firmly rooted one does not mean that Coley's statement is therefore inadmissible. But for it to be admissible the burden is on the State to establish that it is cloaked with "indicia of reliability." This means that there must be a "showing of particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539; *Lee,* 476 U.S. at 543, 106 S.Ct. at 2063. The Supreme Court has declined "to endorse a mechanical test for determining 'particularized guarantees of trustworthiness' under the [Confrontation] Clause," *Wright,* 497 U.S. at 822, 110 S.Ct. at 3150, although it noted that the courts have considerable leeway in their consideration of appropriate factors to determine the existence of particularized guarantees of trustworthiness. *Id.* One of the factors which a court may not consider, however, is other corroborative evidence. It once was that a statement of the defendant could be looked to in establishing the reliability of the hearsay statement. The "interlocking" nature or meshing of the codefendant's and defendant's statements could be considered in determining whether the hearsay statement enjoyed the required "particularized guarantees of trustworthiness." *See Lee,* 476 U.S. at 543–546, 106 S.Ct. at 2063–2065; *Cruz v. New York,* 481 U.S. 186, 192–194, 107 S.Ct. 1714, 1718–1720, 95 L.Ed.2d 162 (1987). In *Wright,* 497 U.S. 805, 110 S.Ct. 3139, the Supreme Court jettisoned such use of corroborative evidence. The Court made clear that although " 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances," the only relevant circumstances are "those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.,* 497 U.S. at 819, 110 S.Ct. at 3148. *See id.,* 497 U.S. at 820, 110 S.Ct. at 3149. The Court was not persuaded that "evidence corroborating the truth of a hearsay statement may properly support a finding that the statement bears 'particularized guarantees of trustworthiness.' " *Id.* 497 U.S. at 822, 110 S.Ct. at 3150. In sum:

[H]earsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.

*Id.*

## V

Applying the teachings of the Supreme Court as they evolved from *Lee* through *Roberts, Wright* and *White,* and, in the light of our *Chapman* and *Standifur,* we proceed to determine whether the trial court abused its discretion in admitting Coley's statement.

We note first that Coley's statement is not now challenged on the ground that it was involuntary. Second, although the trial court and the State were of the view that Coley's statement was against his penal interest while Simmons believed that it was not, we need not decide whether it did or did not meet the stringent test set out in *Standifur* which must be established by the proponent to qualify a statement as a declaration against penal interest. *See Standifur,* 310 Md. at 17, 526 A.2d 955. The State now recognizes that a declaration against penal interest is not a firmly rooted exception to the hearsay rule, a view in which we are in complete accord. Coley's statement implicated Simmons as well as Coley. Therefore, as a threshold requirement, the statement had to be marked by particularized guarantees of trustworthiness sufficient to overcome the presumption that it was unreliable. We do not believe that the required particularized guarantees of trustworthiness were shown under the restraints imposed by *Wright* in determining them.

The State, claiming that Coley's statement was admissible, asserts that *Wright's* rejection of corroborative evidence "should not be applied in this case for several reasons." First, it said, *Wright's* discussion of confessions "was dicta by a bare majority." Second, there was a "strong dissent" representing four of the five Justices. Third, "the Supreme Court in cases specifically concerned with confessions has indicated that corroborating circumstances are a valid consideration," citing to

*Lee* and *Cruz.* Fourth, the State avers, this Court in *Bailey v. State,* 327 Md. 689, 700–701, 612 A.2d 288 (1992) "recognized the permissibility of examining corroborating circumstances.". We are by no means persuaded by those reasons. First, we do not deem the *Wright* rejection of corroborating evidence to be dicta. Second, that there was a "strong dissent" is of no matter. A majority of the court were in agreement that the use of corroborating evidence to establish the reliability of a hearsay declaration was improper. Third, the majority of the Court, as we have seen, shot down its prior holdings that corroborating evidence could be used. Fourth, *Bailey* is clearly distinguishable and is not contrary to *Wright.* The State goes on to look to the testimony of the victims as corroborating Coley's statement. This it may not do.

 The State then takes the position that even if corroborating evidence may not be used, Coley's statement was admissible "because of the indicia of reliability surrounding the taking of the statement." "One valid consideration," the State urges, "is the willingness of [Coley] to talk to the police." The State declares:

> Coley voluntarily confessed to the police. There was no suggestion that Coley was in any way threatened, coerced, or induced into making the statement. Indeed, the waiver of rights form was introduced into evidence, demonstrating a voluntary and knowing relinquishment of the right to remain silent.

This may be so, but it does not go far in establishing the reliability of the statement. A statement's spontaneity is an important factor in determining reliability under the Confrontation Clause. *See State v. Cook,* 135 N.H. 655, 610 A.2d 800, 806 (1992), citing *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). Coley's statement was clearly not spontaneous. He was taken into custody, confronted with the crimes, transported to the Criminal Investigations Division of the Police Department, placed in a six-foot by eight-foot interview room containing a table and a couple of chairs, and interrogated by Officer O'Berry. The first part of

his statement was a narrative in his handwriting which made no mention whatsoever of the robbery. It was only upon specific questions posed by O'Berry that Coley discussed the robbery, and then obviously with reluctance.

The State urges that "[a]nother valid consideration is an examination of the 'age, education, background, experience and condition of the declarant,'" quoting *Standifur*, 310 Md. at 12, 526 A.2d 955. Coley was 18 years of age at the time he made the statement. He was in the 12th grade of Friendly High School, could read and write and did not appear to be under the influence of drugs or alcohol. All of this indicates that Coley knew exactly what he was doing but it does not establish that what he told the police was the truth. His character tended to make his statement suspect. He was streetwise and willingly joined the gang to commit the crimes. He had no compunction about participating—"it sounded easy, it was peer pressure, just knock on the door."

Another factor the State suggests is the motive of the confessor. Did he desire to mitigate his own involvement or to overstate the involvement of the person he implicated? A "reality of the criminal process," the Supreme Court noted in *Lee*, 476 U.S. at 544–545, 106 S.Ct. at 2064–2065, is

> that once partners in a crime recognize that "the jig is up," they tend to lose any identity of interest and immediately become antagonists, rather than accomplices.

"Taking on the full blame for a minor role in an offense ... does little to demonstrate trustworthiness because the declarant still has the motive to shift the blame to others so as to receive a lesser penalty." *United States v. Flores*, 985 F.2d 770, 782 (5th Cir.1993). Coley admitted only to playing a minor role—knocking on the door; he denied taking anything, and put the weapons used in the hands of other members of the gang. Asked if the others took anything he replied, "not that I know of." He curried favor with the police by verifying the identity of Simmons. The police knew that Simmons had participated. Coley refused to give the name of another participant the police did not know about because he did not

"want to snitch on anyone." This, Simmons suggests, "cuts against the State in two ways."

First, it suggests that Coley repeated the name to please the police while avoiding having to reveal his confederates' identities. Second, the State is prohibited from arguing that this makes the confession more reliable, because it bootstraps the other independent evidence in the case, [a victim's] identification of Simmons, evidence which the *Wright* Court said cannot be used to make a showing of "particularized guarantees of trustworthiness."

We are not persuaded by the reasons advanced by the State that Coley's statement was admissible. From our perusal of the statement and the circumstances surrounding the obtaining of it, in the light of *Wright,* we are not satisfied that the State has met its burden of overcoming the presumption that the statement is unreliable; the statement itself and the circumstances under which Coley made it did not establish the particularized guarantees of trustworthiness required to render it admissible. In short, the statement was unreliable and therefore inadmissible. It follows that the trial judge abused his discretion when he admitted the statement in evidence over objection; the receipt in evidence of the challenged statement was erroneous.

## VI

■ *Wright* indicated that corroborative evidence may be used to determine whether a hearsay statement was harmless. 497 U.S. at 823, 110 S.Ct. at 3150. The corroborating evidence here was the testimony of the victims. It showed that the error was harmful. Simmons was masked during the robbery. He removed the mask for a short time enabling one of the victims to see his face. She remembered seeing him at Friendly High School. She identified the masked man as Simmons from his school yearbook picture. Another victim could not identify Simmons but gave the police a description of him. The defense produced three witnesses. Their testimony was in the nature of an alibi, tending to show that Simmons

could not have been present at the scene of the crime. Also, a witness for the defense testified that Simmons attended Gwenn Park High School in the morning and Friendly High School in the afternoon, contrary to the time that the identifying victim said she attended Friendly High School. It is quite apparent that Coley's statement served in a large and significant measure to buttress the identification of Simmons. The importance of the statement to the State's case is indicated by the fact that the first trial of Simmons, which was conducted without Coley's statement in evidence, resulted in a mistrial because the jury could not agree.

In the light of all this, we are not satisfied that the rigid standard we adopted in *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976) has been met. On our own independent review of the record, we are not able "to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict...." *Id.,* 276 Md. at 659, 350 A.2d 665. We hold that the error was not harmless. We note that, in any event, the State declared that it does not contend that any error in admitting Coley's statement was harmless.

Having found that the trial court erred in admitting Coley's statement over objection and that the error was not harmless, we hold that Simmons is entitled to a new trial.

*JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED;*

*CASE REMANDED TO THAT COURT WITH DIRECTION TO VACATE THE JUDGMENTS AGAINST DERRICK WENZELL SIMMONS AND ORDER A NEW TRIAL;*

*COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.*