720 A.2d 1253

**James Albert WEST**

v.

**STATE of Maryland.**

**No. 334, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 3, 1998.

148

---

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Regina Hollins Lewis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack B. Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for Appellee.

Argued before DAVIS and ADKINS, JJ., and MARVIN H. SMITH, Judge (retired), Specially Assigned.

MARVIN H. SMITH, Judge (retired), Specially Assigned.

We shall here affirm convictions of first degree felony murder, robbery with a deadly weapon, robbery, use of a handgun in the commission of a felony, conspiracy to commit robbery with a deadly weapon, and conspiracy to commit robbery returned by a Prince George's County jury against appellant, James Albert West (West or appellant). He was sentenced to life imprisonment for the felony murder conviction, twenty years consecutive for the use of a handgun in the commission of a felony, and twenty years concurrent for the conspiracy to commit robbery with a deadly weapon. The remaining convictions were merged.

Before this Court he contends:

(1) The trial judge erred in denying the motion to suppress the statements taken by Detective Canales on January 30, 1997, and Detective Miller on February 5, 1997;

(2) The trial judge erred in concluding that there was no basis for submitting the charge of second degree murder to the jury because the co-defendant had already been convicted of first degree felony murder;

(3) The trial judge erred in excluding a statement made by West that should have been admitted as an excited utterance; and

(4) The trial judge erred in refusing to admit an incriminating statement of Aaron Footes under the declaration against interest exception to the hearsay rule.

We shall state such facts as are relevant to each of the contentions as we address them.

## I.

### The Motion to Suppress

West was arrested on a warrant around 6:00 a.m. on January 30, 1997. He was placed in an interview room in the Criminal Investigation Division of the Prince George's County Police Department at around 8:00 a.m. on that date. An interview began with Detective Epperson at approximately 9:47 a.m. Epperson testified that he advised the accused of his rights and that West then signed a waiver and gave a statement. The admission into evidence of that statement is not challenged. That interview apparently concluded at approximately 1:30 p.m. on January 30, 1997.

At approximately 3:49 p.m. on that same day, January 30, after first obtaining a second waiver of West's *Miranda* rights, what is referred to as a "voice stress test" was administered by Detective Glen Clark. West, at that time, denied having been involved in the homicide at a K–Mart parking lot on December 31, the subject of this prosecution. He did admit, however, that he and a cohort were "out doing robberies that particular night."

Then, at 7:52 p.m. on January 30, Detective Ismael Canales began an interview with West. West's brief refers to Canales as "the fifth officer to interview the Appellant that day." Detective Canales stated that appellant admitted that he and Aaron Footes had gone out together with the purpose of robbing someone and that he was there as Footes's "backup." Canales testified:

I then went into the question and answer session section which was, my first question was, what are you supposed to be doing while Aaron is out in the car?

And he says, set and waiting because I am his backup.

What did you mean by Aaron didn't do it?

Aaron went to the pizza place and came back. He didn't rob the pizza place.

The next question is: Were you aware that Aaron was going to rob the pizza place?

Yes, I was were—that is aware—that Aaron was going to rob the pizza place.

After he didn't rob the pizza place, what were you driving Aaron around for?

Riding Aaron around to rob somebody.

Next question: Why did you take Aaron to K–Mart?

I take Aaron to K–Mart so he can go to buy something in the K–Mart. I know that he can possibly rob somebody.

Knowing that he could rob someone, you were with him to do what?

To be his backup.

When Aaron went to the right of the K–Mart front door, you knew that he was going to do what?

When Aaron went to the right, he seen somebody and he robbed.

How do you know this?

I heard—I hard [sic] a gun noise and Aaron ran to the car.

West was again interrogated on February 5, 1997. Detective Miller testified that he questioned West on that day because he wanted to clarify some of the information previously provided by West. Miller said he had learned from Footes that West had shot the victim in the foot which contradicted West's previous account of the murder in which he stated that he remained in the car the entire time and was not involved in the shooting. When asked why he had gone to the K–Mart

with Footes on the evening in question, West said that "he went there to find someone to rob."

West here contends that the January 30 statement to Canales and the February 5 statement to Miller "should have been suppressed because they were the product of repeated interrogations by five different police officers and by the improper influence of the voice stress test." At the suppression hearing, the trial judge found the statements to have been voluntary.

■■■■ We look only to the record of the suppression hearing and do not consider the record of the trial in reviewing the denial of a motion to suppress. *See Trusty v. State,* 308 Md. 658, 670–71, 521 A.2d 749, 751 (1987) (quoting *Jackson v. State,* 52 Md.App. 327, 332 n. 5, 449 A.2d 438, 441 n. 5, *cert. denied,* 294 Md. 652 (1982)). We are further limited to considering only those facts which are most favorable to the State as the prevailing party on the motion. *See Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239, 1240–41 (1990); *see also Simpler v. State,* 318 Md. 311, 312, 568 A.2d 22 (1990). In considering the evidence presented at the suppression hearing, "[w]e extend great deference to the fact finding of the suppression hearing judge with respect to determining the credibilities of contradicting witnesses and to weighing and determining first-level facts." *Perkins v. State,* 83 Md.App. 341, 346, 574 A.2d 356, 358 (1990). "When the facts are in dispute, we accept them as found by the trial judge unless he is clearly erroneous in his judgment on the evidence before him." *Riddick,* 319 Md. at 183, 571 A.2d at 1240. Even so, as to the ultimate conclusive fact of whether an action taken was proper, we must make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case. *See id.; Perkins,* 83 Md.App. at 346, 574 A.2d at 358. With this in mind, we turn to the case before us.

In making her ruling, the trial judge (Krauser, J.) found "no lack of voluntariness" in the statements made to the detectives and denied the motion. She explained, with regard to the statement on January 30, 1997, that the interrogations includ-

ed breaks and that "it was a very long day for him, but . . . he had been provided meals and beverages throughout that period of time." As to the statement on February 5, 1997, the judge observed that appellant was taken to the commissioner at about 1:00 a.m., then brought back to the County Detention Center the following night at about 6:00 p.m. The judge concluded that "the length of time in which West was back at the County Detention Center seem[ed to her to be] a sufficient interruption of the interrogation process that there [was] no undue coercion based on that delay. . . . All the statements given therefore [were] voluntary and there was no infringement on Mr. West's rights."

The foundation for West's contention is that the police exerted psychological coercion upon him, thus forcing him to involuntarily make statements. Before further examining the circumstances of this case, we shall review the law concerning involuntary statements and coercion.

The Supreme Court of the United States recognized in *Spano v. New York*, 360 U.S. 315, 321, 79 S.Ct. 1202, 1206, 3 L.Ed.2d 1265 (1959), that "the actions of police in obtaining confessions have come under scrutiny in a long series of cases." In *Spano*, the Court recognized that the police are becoming increasingly sophisticated in extracting confessions. *Id.* The Court held that the confession there was involuntary, basing its decision on the fact that the defendant was a "foreign-born young man of 25[,] . . . had progressed only one-half year into high school and . . . had a history of emotional instability." *Id.* at 321–22 & n. 3, 79 S.Ct. at 1206 & n. 3. The Court further based its conclusion on the length of the interrogation of "eight straight hours." *Id.* at 322, 79 S.Ct. at 1207. Looking at the totality of the circumstances, the Supreme Court concluded that the defendant's "will was overborne by official pressure, fatigue and sympathy falsely aroused after considering all of the facts. . . ." *Id.* at 323, 79 S.Ct. at 1207.

In *Hof v. State*, 337 Md. 581, 655 A.2d 370 (1995), Chief Judge Bell recently stated for the Court that "[u]nder Maryland's common law, a confession is presumptively inadmissible

'unless it is "shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary." ' " *Id.* at 595, 655 A.2d at 377 (citing cases). He further stated for the Court, referring to *Nicholson v. State,* 38 Md. 140, 153 (1873), that "almost a century before *Miranda* " the Court of Appeals stated: "[I]t is very clear upon all the authorities, that if the confession of the appellant had been induced by any threat of harm, or promise of worldly advantage held out to him ..., it ought to be excluded." *Id.* The Court next stated, citing cases, "[I]n determining whether a confession is plagued with any 'coercive barnacles', the standard ... is whether, under the totality of all the circumstances, the statement was given freely and voluntarily." *Id.* The Court explained that the totality test consists of a number of factors, including:

> where the interrogation was conducted; its length; who was present; how it was conducted; its content; whether the defendant was given Miranda warnings; the mental and physical condition of the defendant; the age, background, experience, education, character, and intelligence of the defendant; when the defendant was taken before a court commissioner following arrest; and whether the defendant was physically mistreated, physically intimidated or psychologically pressured.

*Id.* at 596–97, 655 A.2d at 377–78 (citations omitted).

This Court has also addressed the admissibility of a statement. In *State v. Hill,* 2 Md.App. 594, 600–01, 236 A.2d 27, 30 (1967), Chief Judge Robert C. Murphy noted for this Court that "the standard by which the admissibility of [the defendant's] ... statement is to be measured is whether, under the totality of all the attendant circumstances, the statement was given freely and voluntarily." The Court interpreted that test as follows: ·

> More specifically, the constitutional inquiry is not whether the conduct of the officers ... was shocking, but whether his confession was free and voluntary, *viz.,* whether it was extracted by any sort of threats, or violence, or obtained by any direct or implied promises, however slight, or by the

exertion of any improper influence. Otherwise stated, the test of the admissibility ... is whether his will was overborne at the time he confessed; or whether his confession was the product of a rational intellect and a free will; or whether his statement was 'freely self-determined[.]' So that, as succinctly stated by the Court of Appeals ... the question is not whether the accused was frightened, but whether his disclosures to the officers were freely and voluntarily made at a time when he knew and understood what he was saying.

*Id.* at 601–03, 236 A.2d at 30–31 (citations omitted).

Appellant also contends that the use of the results from the voice stress test contributed to the coercion. Citing *Johnson v. State*, 31 Md.App. 303, 355 A.2d 504 (1976), he contends that "the use of 'truthfulness' tests such as voice stress tests and lie detector tests have the potential to improperly coerce a confession[.]" While this Court did note, with reference to the contentions relative to a polygraph or "lie detector," that "the use of the deception testing device was intended to produce a psychological effect upon the accused in order to obtain the relevant facts[,] ..." it further stated that "the use of such a procedure for that purpose would not as a matter of law require the exclusion of a confession so obtained[.]" *Id.* at 305, 355 A.2d at 506.

 In the instant case, as the trial judge noted, there was no continuous badgering by the police. The cases cited by appellant are inapposite to the instant case because they contain egregious and extreme circumstances where a person's will was overborne by aggressive police tactics. We view the totality of circumstances in the present case in making our independent judgment. Including the use of the results from the voice stress test, there is no suggestion in the record that appellant's will was overborne. No requests went unhonored. There were no inducements, promises, or threats. Clearly, there was no physical coercion. This is simply a case of a sheer passage of time with repeated questioning which is

essential to the majority of interviews. The trial court did not err in concluding that the statement was voluntary.

## II.

### Submission of Second–Degree Murder to the Jury

In *Clark v. State,* 80 Md.App. 405, 564 A.2d 90 (1989), Judge Robert M. Bell stated for this Court that a trial judge

must instruct the jury on a matter which is a proper subject for instructions where a timely request has been made even though that request is not totally accurate and may contain some erroneous material. To hold otherwise would be to place on the parties the responsibility for determining what the law is, a responsibility which is properly entrusted to the court.

*Id.* at 412, 564 A.2d at 94 (citing cases).

Maryland Rule 8–131(a) states that our appellate courts will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court...." Rule 4–325(c) provides in pertinent part, "An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object."

In *State v. Hutchinson,* 287 Md. 198, 411 A.2d 1035 (1980), Judge Cole was dealing for the Court with then Rule 757(h) when he made plain that whether to review an issue not raised and decided below is discretionary with the appellate court. He said for the Court:

The rule clearly anticipates circumstances giving rise to error which may justify an appellate court's intervention. However, the discretion conferred by § h is not exercised as a matter of course. It presupposes some inquiry by the reviewing court to determine whether the error is material to the rights of the accused, i.e., vitally affecting his right to a fair and impartial trial.

While we do not propose to set forth any fixed formula for determining when discretion should be exercised, we do

expect that the appellate court would review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention. We enumerate these factors because we feel they are ordinarily inconsistent with circumstances justifying an appellate court's intervention under § h. In our cases we have characterized instances when an appellate court should take cognizance of unobjected to error as compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.

*Id.* at 202–03, 411 A.2d at 1038.

On instructions, Judge Eldridge said for the Court in *Johnson v. State,* 303 Md. 487, 495 A.2d 1, *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986):

A party is generally entitled to have his theory of the case presented to the jury through a requested instruction if that theory is a correct exposition of the law and there is evidence in the case which supports it. *Smith v. State,* 302 Md. 175, 179, 486 A.2d 196, 198 (1985); *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651, 655 (1979); *Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258, 265 (1974). The test for whether an instruction was proper has two aspects: (1) whether the instruction correctly states the law, and (2) whether the law is applicable in light of the evidence before the jury. *Sergeant Co., supra,* 285 Md. at 194, 401 A.2d at 655. If the test is met, the instruction *must* be given. *Smith, supra,* 302 Md. at 179–80, 486 A.2d at 198.

*Id.* at 512, 495 A.2d at 13 (emphasis in original).

In *Johnson v. State,* 310 Md. 681, 531 A.2d 675 (1987), Judge Eldridge said for the Court:

Although the trial court's failure to give a requested instruction may constitute error, the rules go on to indicate that such error is ordinarily not preserved for appellate review unless the requesting party objects after the trial court instructs the jury. Rule 4–325(e) provides in pertinent part that "[n]o party may assign as error . . . the failure to give

an instruction unless the party objects on the record promptly after the court instructs the jury...." The language of the rule plainly requires an objection after the instructions are given, even though a prior request for an instruction was made and refused.

*Id.* at 686, 531 A.2d at 677.

In this case, appellant failed to request a second-degree murder jury instruction or make an objection to the jury instructions offered by the court. After reviewing the instructions at the bench, the following was said:

> [THE COURT:] All right. All set? That's it. All right. Any exceptions? Just so it is clear, no exceptions to the instruction?
>
> [DEFENSE COUNSEL:] Not at this point.
>
> [ASSISTANT STATE'S ATTORNEY:] No, Your honor.
>
> [THE COURT:] No exceptions.

After the trial judge instructed the jury, the following occurred:

> [THE COURT:] All right. Anything further?
>
> [DEFENSE COUNSEL:] No.
>
> [THE COURT:] Mr. Manico?
>
> [ASSISTANT STATE'S ATTORNEY:] No, Your honor.

■ Since there was no request for the instruction, and there were no objections to the instructions given, the issue was not preserved for appeal.

■ While, as noted above, the issue was not preserved, an appellate court may exercise discretion in addressing the issue. *See* Md. Rule 8–131(a). Quite simply, the jury was not required to be instructed on second-degree murder because it is not a lesser included offense of first-degree felony murder and the evidence produced at trial was insufficient to support such an instruction. *See Butler v. State*, 91 Md.App. 515, 523, 605 A.2d 186, 189 (1992), *aff'd*, 335 Md. 238, 643 A.2d 389 (1994). In *Butler*, Judge Moylan said for this Court:

The murderous *mens rea* under [the theory of felony murder based on armed robbery] does not entail any intent to kill at all but only the intent to perpetuate the underlying felony.... Second-degree murder, by contrast, requires the specific intent either to kill or to commit grievous bodily harm against the victim. Although second-degree murder of the intent-to-kill variety is thereby a lesser, included offense subsumed within premeditated murder, it is not a lesser included offense within felony-murder.

*Id.* In this case, the evidence does not support the instruction for second-degree murder because the evidence at trial all revolved around the commission of a robbery. Therefore, it was not error to withhold it from the jury's consideration.

## III.

### Excited Utterance

Approximately two and one-half hours after the murder in question West allegedly spoke by telephone to his brother, Lester Price. It is claimed that during this conversation, West told Price that Footes was crazy and he thought that Footes had shot someone. Prior to Price's testimony, the State moved *in limine* to preclude the admission of the statement. The trial judge held this statement to be inadmissible hearsay.

West contends that this statement is admissible under the excited utterance exception to the hearsay rule set forth in Maryland Rule 5–803(b)(2). The rule provides: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... (b) Other exceptions. (1) ... (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

To determine whether a statement is properly characterized as an "excited utterance," we examine "the totality of the circumstances." *State v. Harrell,* 348 Md. 69, 77, 702 A.2d 723, 727 (1997). "A statement may be admitted under this exception if 'the declaration was made at such a

time and under such circumstances that the exciting influence of the occurrence clearly produced a spontaneous and instinctive reaction on the part of the declarant . . . [who is] still emotionally engulfed by the situation. . . .' " *Id.* (quoting *Harmony v. State,* 88 Md.App. 306, 319, 594 A.2d 1182, 1188 (1991)) (citations omitted). In addition, the excited utterance exception applies only to statements related to the "startling event[.]" *See Harrell,* 348 Md. at 80, 702 A.2d at 727 (citing Md. Rule 5–803(b)(2)). An appellate court should not reverse a trial court's decision on the admissibility of an excited utterance absent an abuse of discretion. *See Stanley v. State,* 118 Md.App. 45, 53, 701 A.2d 1174, 1178 (1997), *cert. granted,* 349 Md. 105, 707 A.2d 90 (1998).

██ "The rationale behind the excited utterance exception [to the hearsay rule] is that the startling event suspends the declarant's process of reflective thought, thus reducing the likelihood of fabrication." *Harrell,* 348 Md. at 77, 702 A.2d at 727; *see also* 6 Lynn McLain, *Maryland Evidence* § 803(2).1 at 350. A primary consideration in determining whether a declaration qualifies as an excited utterance is the time between the startling event and the declarant's statement. *See id.* This Court recently recognized that, "[a]lthough there is no absolute limit on the amount of time that may elapse between an utterance that will be admissible at trial and the corresponding exciting event, the utterance becomes less reliable as time passes." *Stanley,* 118 Md.App. at 54, 701 A.2d at 1179. We do recognize, however, that the closeness in time between the startling event and the statement, while an important consideration, is not determinative. *See Honick v. Walden,* 10 Md.App. 714, 717, 272 A.2d 406, 409 (1971).

The excited utterance exception to hearsay was discussed at length by Judge Motz for this Court in *Harmony.* There, we analyzed the testimony of a victim's sister regarding her telephone conversation with a victim that took place three hours after a startling incident. *See Harmony,* 88 Md.App. at 321, 594 A.2d at 1187. In its analysis, the Court stressed the importance of the startling event's impact on the declarant by stating:

> The utterance need not be contemporaneous or simultaneous with the principal act. While it may be subsequent to it, it must be established that the exciting influence has not lost its sway or been dissipated by meditation. But the crucial factor is not so much the lapse of time or change of location but the continuance of a situation which insures that what is said is, in fact, a spontaneous reaction to the occurrence, rather than an independent, preconceived expression of the speaker's will.

*Id.* at 320, 594 A.2d at 1188–89 (quoting *Deloso v. State,* 37 Md.App. 101, 106, 376 A.2d 873, 877 (1977) (citations omitted)). The Court held that the victim was still "in the throes of the 'exciting event' and therefore not capable, of reflective thought...." *Id.,* 594 A.2d at 1189. This determination was based on facts including "[t]he victim was upset enough ... to lock herself in a bathroom, crying." *Id.* She "was 'crying hysterically' and could barely be understood[.]" *Id.* at 318–19, 594 A.2d at 1188.

In this case, the statement allegedly was made about two and one-half hours after the murder. The trial judge, in rejecting its admissibility, stated that her "understanding is an excited utterance has to be a present sense impression that occurs pretty close to the occurrence."

Here there is no evidence in the record similar to that in *Harmony* which would allude to appellant's reflective process being still suspended by the startling event during his conversation with his brother. The record does not reveal any clues as to appellant's demeanor at the time the statement was made. In essence, there is no evidence that would negate the likelihood of fabrication. Thus, there was no abuse of discretion by the trial court in not admitting the statement as an excited utterance.

## IV.

### Declaration Against Interest

At trial defense counsel proffered that after speaking with West, his brother, Price, confronted Aaron Footes about the

incident the following day. It is claimed that during this conversation, Footes admitted to robbing the victim. According to Price, Footes also admitted that he first shot the victim in the foot, but later, after discovering the victim's badge, got scared and shot him in the head.

West contends that this evidence should have been admitted under the provisions of Maryland Rule 5–804(b)(3), which states:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) ...

(2) ...

(3) Statement against interest. A statement which was at the time of its making so contrary to the declarant's pecuniary or propriety interest, so tended to subject the declarant to civil or criminal liability, or so tended to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The trial judge, in rejecting the proffer under the provisions of this rule, said:

I just don't see sufficient indicia of reliability. I don't see any corroboration to indicate trustworthiness of that statement, talking about a statement made to the brother of the accused which totally incriminates the alleged speaker and does as much as possible to exculpate the brother of the [prospective] witness.

It is a balancing test, unfortunately I have to exercise. I can't allow it to go to the jury, and then let them decide whether or not it is trustworthy. That is not what the Rules of Evidence anticipate. I have to make that decision,

and I just am not hearing anything that shows me such corroboration to allow such a statement to come in.

\* \* \*

I think if Mr. Footes corroborated it through his own statements to the police, and he didn't—he never implicated Mr. West at all, then that would be corroboration of this alleged statement, but where we got ballistics tests that tend to suggest the contrary, and nothing that corroborates it other than Mr. West's own statements, I don't think that that is sufficient corroboration. It certainly is not clear corroboration.

■ The rationale for admission of such statements is that "there is a circumstantial guarantee of sincerity when one makes a statement adverse to one's interest." 6 Lynn McLain, *Maryland Evidence* § 804(3).1 at 467 (citations omitted). The defense may prove an inculpatory or exculpatory statement made by a third person "only if it appears to the trial court that there was no collusion in obtaining it and there are sufficient indicia of its trustworthiness to justify its receipt into evidence. Similarly, a statement which inculpates not only the declarant but also the accused should be inadmissible absent corroboration." 6 Lynn McLain, *Maryland Evidence* § 804(3).1 at 469–70 (citations omitted).

Although decided before the adoption of the Maryland Rules of Evidence, effective July 1, 1994, we believe the statement by Chief Judge Brune for the Court in *Brady v. State*, 226 Md. 422, 174 A.2d 167 (1961), *aff'd*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to be good law today. The Court there said, "To what extent a confession or admission of a third party is free of collusion and bears the indicia of trustworthiness is a question which we think should be entrusted in the first instance to the sound discretion of the trial judge." *Id.* at 429, 174 A.2d at 171.

*State v. Standifur*, 310 Md. 3, 526 A.2d 955 (1987), was likewise decided before the adoption of the present rule. However, it would seem that the three-part test there articulated for determining whether a statement falls within this

exception to the hearsay rule is applicable under the rule. The Court indicated that first, the declarant's unavailability must be established by the proponent of the statement. *See id.* at 12, 526 A.2d at 958. Next, the trial judge must carefully examine:

> the content of the statement in light of all known and relevant circumstances surrounding the making of the statement and all relevant information concerning the declarant, and determine whether the statement was in fact against the declarant's penal interest and whether a reasonable person in the situation of the declarant would have perceived that it was against his penal interest at the time it was made.

*Id.* at 17, 526 A.2d at 962.

█ The Court of Appeals in yet another pre-Maryland Rules of Evidence case examined the corroboration requirement of the declaration against interest hearsay exception. *See Simmons v. State,* 333 Md. 547, 636 A.2d 463, *cert. denied,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 26 (1994). There, the Court noted that the burden is on the proponent "to establish that it is cloaked with 'indicia of reliability' . . . [which] means that there must be a 'showing of particularized guarantees of trustworthiness.' " *Id.* at 560, 636 A.2d at 469 (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). The Court made clear, however, that corroboration by reference to other evidence at trial is not the correct measurement of reliability; rather the inherent reliability of the statement is to be measured by those circumstances "that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 560, 636 A.2d at 469–70 (quoting *Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990)). Quoting *Wright,* the *Simmons* court held, "[H]earsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.* at 561, 636 A.2d at 470. The *Simmons* Court makes it clear that it is improper to "look to the testimony of

the victims as corroborating [declarant's] statement." *Id.* at 562, 636 A.2d at 470.

As a preliminary matter, the declaration against interest exception to the hearsay rule requires that the declarant be unavailable. *See* Md. Rule 5–804. In this case, the declarant took the stand and refused to testify. Thus, under Rule 5–804(a)(2), he is unavailable for purposes of the rule.

Next, the statement is clearly against Footes' penal interest, thus satisfying part two of the test. As for the third factor, it does not appear that the trial judge, in examining the totality of the circumstances that surrounded the making of the statement, abused her discretion by concluding that the statement was not sufficiently reliable for admission into evidence. The totality of circumstances under which the statement was made militate against a finding of the requisite reliability. The major factor considered by the trial court was that the person to whom the statement was said to have been made was the appellant's brother. It is not inconceivable that appellant's brother would be desirous of exculpating him from the crime.

The judge did, however, consider Footes' subsequent statements to the police. It appears that the reliability of the declarant's statement, made the day after the crime, was damaged by a conflicting written report submitted to the police by the declarant subsequent to the making of the statement. The trial judge also considered the ballistics tests on the gun and bullets, the results of which are unsupported by Footes' statement. These circumstances are not ones that can be measured at the time the statement was made as indicated by *Simmons.* Thus, the trial judge's consideration of the ballistics tests and the declarant's subsequent written statements to the police was improper. This improper consideration, however, does not affect the decision. The lack of evidence produced by appellant to get over the burden of proving the statement's reliability, as required in *Simmons,* was not met. In that respect, the trial judge did not abuse her discretion in refusing to admit the statement.

■■■■■■ As an alternate ground for our affirmance we hold that even if the trial judge erred in refusing to admit the statement in question, such error was harmless beyond a reasonable doubt. In a criminal case, the test for determining whether error by the trial court was harmless is whether, upon an independent review of the record, we are able to "declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict...." *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976); *see also Johnson v. State*, 303 Md. 487, 528–29, 495 A.2d 1, 22 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986) (stating, "It is a fundamental rule of appellate procedure that a reviewing court will not reverse upon rulings on evidence where the ruling did not result in prejudice to the complaining party.").

■■■■ The overwhelming evidence in this case, including statements made by appellant to police admitting his presence and involvement in the underlying robbery, and testimony from ballistics experts that two weapons were likely used, leads to the determination that appellant was guilty beyond a reasonable doubt of felony murder. The fact that Footes may have been the only shooter, which is the content of the statement at issue, does not negate appellant's involvement in the underlying felony, i.e. robbery. In such instance, appellant can be found guilty of felony murder under the felony murder doctrine as a participating felon when a homicide is committed by a co-felon, without being the trigger man. *See, e.g. Campbell v. State*, 293 Md. 438, 442, 444 A.2d 1034, 1037 (1982) (stating, "This Court has held that under the felony-murder doctrine a participating felon is guilty of murder when a homicide has been committed by a co-felon.") (citations omitted).

## CONCLUSION

In sum, the trial court did not err in denying West's motion to suppress the statements made by West to either detective. In addition, although the issue of giving a second-degree jury instruction was not preserved, there was no evidence to re-

quire submission of such an instruction as second-degree murder is not a lesser included offense of felony murder. Next, the statement made by West to his brother was properly excluded from evidence as it was not an abuse of discretion for the trial court to determine that the statement was not an excited utterance. Lastly, the trial court did not err in refusing to admit the statement made by the accomplice to West's brother, in that there was no abuse of discretion in determining that the statement did not properly fall under the declaration against interest exception to hearsay.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**