**UNITED STATES of America Appellants,**

v.

**Carla Renee THOMAS Appellee.**

**No. 90–1774EM.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1990.

Decided Nov. 19, 1990.

Lee T. Lawless, St. Louis, Mo., for appellants.

Raymond M. Meyer, St. Louis, Mo., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and WATERS,* District Judge.

H. FRANKLIN WATERS, Chief District Judge.

After a three-day jury trial, defendant was convicted of violating 21 U.S.C. § 841 by possessing with intent to distribute cocaine and 18 U.S.C. § 924 of carrying or using a firearm during the commission of a drug trafficking offense. The trial court[1] sentenced defendant to 78 months on the trafficking charge and 60 months on the gun charge, to run consecutively. Defendant appealed, contending that the trial court erroneously excluded certain evi-

---

* The Hon. H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

1. The Hon. Edward L. Fillippine, Chief Judge, United States District Court for the Eastern District of Missouri.

dence proffered by her more particularly described below.

On March 26, 1989, officers of the St. Louis Metropolitan Police Department, acting upon a tip, conducted a surveillance of the Greyhound Bus Station in St. Louis, Missouri. The informant advised the officers that four individuals would be arriving on a bus from Los Angeles carrying narcotics. The officers observed defendant, Carla Renee Thomas, and three other individuals, Eric Kellin, Dominica Ashford, and a minor, exit a bus arriving from Los Angeles. The officers observed Ms. Thomas retrieve a suitcase from the lower carousel of the bus and hand it to Eric Kellin. They approached Kellin, and after identifying themselves, were given permission to search the suitcase. When opened, they discovered that the suitcase contained two large brick-shaped items which the parties later stipulated were 1,895.7 grams of cocaine of 89% purity. They also discovered in the suitcase certain female clothing items belonging to Ms. Thomas and a rent receipt in her name. Thomas, Kellin and Ashford were then arrested, and, upon searching Thomas' purse, the police found a loaded revolver.

Dominica Ashford pleaded guilty to certain charges stemming from the arrest. While the transcript is not completely clear in this respect, it appears that Eric Kellin had either agreed to plead guilty to the charges stemming from the arrest and had agreed to cooperate with the authorities or was considering and discussing that possibility. Kellin was murdered and co-defendant, Frederick Townley was charged with his murder.

At her trial, Ms. Thomas sought to call Kellin's attorney to testify about a conversation that Kellin had with his attorney approximately one month before his murder. The offer of proof at the trial (Tr. 155) in respect to this conversation was:

MR. LAWLESS: Your Honor, the offer of proof would be as follows: that if Mr. Larry Parres who had been the attorney for Mr. Eric Kellin, former co-defendant now deceased, were called as a witness and if the Court were to rule that his claim of privilege would not stand, and if the Court were likewise to determine that this was an exception to the hearsay rule, Mr. Parres would testify that prior to his client's death he was contacted at his office by his client on the phone, that he recognized his voice from prior conversations with him, that Mr. Kellin seemed excited when he spoke with him and he said that he had to let Mr. Parres know that Dominica Ashford and Carla Thomas had not been involved in the transportation of cocaine from Los Angeles to St. Louis, resulting in the arrest on Easter Sunday of last year. That would be the substance of his testimony as I understand it. That's based on Mr. Parres' initial statement to me which was sometime during the week of November 13th, and then based on 2 subsequent telephone conversations that I had with him about the subject matter.

There is no dispute but that it was the position of Mr. Parres, Kellin's attorney, that he would, if called to testify, decline to do so on the basis that the communication made by Kellin in the telephone conversation was subject to an attorney-client privilege. The trial court, after substantial discussions on the record with the attorneys (Tr. 2–58, 2–64, and 2–150) ruled that the matters which Kellin's attorney learned in the telephone conversation were privileged and that "therefore, that the person could not be required to testify notwithstanding that privilege". (Tr. 152).

While this court believes that there is a serious and close question in relation to whether the conversation that Kellin had with his attorney is privileged, it has determined that it is not necessary to decide this issue because the conversation, even if the court had not held that it was privileged, is clearly hearsay and was properly excluded. Since the parties do not dispute what the attorney would have said had he been called, nor the circumstances of the telephone conversation, the court has concluded that application of the rules of evidence to the statement is a matter of law which can be decided by this court and it is not

necessary to remand the matter for any determination by the trial court.

It is obvious from the colloquy between the trial court and counsel for the parties that they recognized that, even if the conversation was not ruled to be privileged, there were still severe problems with its admissibility and trial procedures and trial tactics if the evidence was admitted. It is apparent from this discussion that the trial judge and the attorneys for the parties were concerned, if the evidence was admitted, about whether the government would then be allowed to disclose that Dominica Ashford had pled guilty to charges arising out of the incident, admitting her complicity, apparently in direct conflict with the statement made by Kellin to his attorney that Dominica Ashford had no knowledge of the drug transportation.[2] After discussing in some detail the thorny questions raised by the proffer of this evidence, the trial judge ruled that it would be excluded and appears to have based his ruling on the privilege issue.

■ During the discussions, it was apparent that the trial court was concerned that, irrespective of its ruling on the privilege issue, the evidence was still inadmissible because it was hearsay. In these discussions, counsel for the defendant indicated that he contended that it was admissible either under the hearsay exceptions contained in Rule 804(b)(3) or Rule 804(b)(5).[3]

Rule 804(b)(3) excepts from exclusion because of its hearsay nature:

> A statement which was at the time of its making so far contrary to the declarant's, pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability … that a reasonable person in the declarant's posi-

tion would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Thus, to determine whether this hearsay exception applied to the statement contained in the telephone conversation, the rule requires that the court apply a two-part analysis. The court must first determine whether the statement made by Kellin "so far tended to subject" him to civil or criminal liability as to make the statement believable and admissible. However, even if the court determines that that part of the two-part test is met, it must then determine whether there are other corroborating circumstances which clearly indicate the trustworthiness of the statement.

From the offer of proof and other discussions in the record on this point, this court is convinced that neither prong of that test is met. While it is not completely clear from the record exactly how far the discussions between Kellin, his lawyer, and the government's attorney in respect to his admission of guilt and cooperation had progressed by the time he was murdered, it appears that it was expected that he would ultimately plead guilty and cooperate. Then, he gratuitously, apparently in the middle of these discussions, called his lawyer and told him that he could not let Ms. Ashford and Ms. Thomas be convicted of something that they did not do because, according to the offer of proof, "Dominica Ashford and Carla Thomas had not been involved in the transportation of cocaine from Los Angeles to St. Louis".

---

**2.** During discussions with the trial court, trial counsel for the government represented to the court that Ms. Ashford admitted in his presence that she knew that the bag contained the contraband.

**3.** In the brief filed by appellant Thomas, counsel argued only that the trial court erred in excluding the testimony on the basis of attorney-client privilege. No argument was made in respect to the hearsay issue. The government,

in its responding brief, contended that, even if the evidence was not excluded because of the attorney-client privilege, it should still be excluded because the statements made in the telephone conversation were barred by the hearsay rule. No reply brief was filed but counsel for appellant, during oral arguments, answered the government's argument in relation to this issue, and responded to several questions asked by the members of this court in respect to the hearsay problem.

This court does not understand how that statement so far tended to subject Kellin to criminal or civil liability that he would not have made it had it not been true. Forgetting for the moment that it appears that he was at least strongly considering admitting his guilt, how did the statement attempting to exculpate Thomas and Ashford inculpate him, even if he intended to resist the charges and go to trial? He did not say that he was guilty and that statement does not even infer that. He simply said, in effect, that these two women defendants knew nothing about what had occurred on the trip to California and return to St. Louis. Assuming that he believed that, there is nothing in the record to indicate that he acquired that knowledge because he was guilty of the crime. Thus, this court finds that the proffered hearsay statement does not meet the first prong of the Rule 804(b)(3) test.

Additionally, there are no "corroborating circumstances clearly indicating the trustworthiness of the statement" proffered in this case. In fact, the circumstances indicate that the statement is not trustworthy. Although Kellin said that neither Ms. Ashford or Ms. Thomas had knowledge of the purpose for the trip to California, Ms. Ashford's guilty plea indicates otherwise. Similarly, the evidence introduced at the trial shows that the suitcase containing the two large bricks of cocaine also contained several items of clothing which Ms. Thomas admitted were hers, and a loaded gun was found in her purse when she was arrested. In her testimony, Ms. Thomas naturally attempted to explain this incriminating evidence but the damaging nature of it was by no means diminished by her testimony to the point that the circumstances "clearly indicated the trustworthiness" of the claim by Kellin that she was not involved in the criminal offense.

The Court of Appeals for the First Circuit, in *United States v. Barrett*, 539 F.2d 244 (1st Cir.1976), after detailing at length the history of Rule 804(b)(3), and after stating that the trustworthiness requirement should not be construed to require "a standard so strict as to be utterly unrealistic" went on to recognize that Congress obviously intended for this provision of the rule to have some purpose. The Court said:

On the other hand, there is no question but that Congress meant to preclude reception of exculpatory hearsay statements against penal interests unless accompanied by circumstances solidly indicating trustworthiness. This requirement goes beyond minimal corroboration.

*Id.* at 253.

In this case, the circumstances not only do not "solidly" indicate trustworthiness, they do not even reach the level of "minimal corroboration". All that we have is a telephone call by Kellin to his lawyer coming "out of the blue" at a time that he was at least considering pleading guilty to the charges against him and agreeing to cooperate with the authorities, claiming that neither Ashford or Thomas were guilty of the crimes with which they were charged. Ashford pleaded guilty, and the evidence at the trial indicates clearly that Thomas was guilty.

■ In the discussions with the trial judge and in oral arguments in this court, counsel for defendant contended that the evidence was also admissible under the "other exceptions" provision of Rule 804(b)(5). Of course, that rule does not come into play unless the proffered statement is "not specifically covered by any of the foregoing exceptions". It would appear that the proffered statement in this case is covered by the Rule 804(b)(3) exception, but that it did not meet the test for admissability imposed by that provision. However, even if the "other exceptions" provision of Rule 804(b)(5) applies, there is still a requirement that the statement have "equivalent circumstantial guarantees of trustworthiness". For the reasons already discussed, the proffered statement does not have any guarantees of trustworthiness and, in fact, the evidence and circumstances appear to show that it was not trustworthy.

In the recent case of *United States v. Calkins*, 906 F.2d 1240 (8th Cir.1990), this court quoted from S.Rep. No. 1277, 93rd Cong.2d Sess. reprinted in 1974 U.S.Code

Cong. & Admin.News 7051, 7065–66 as follows:

> It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in Rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule.

*See also United States v. Woolbright,* 831 F.2d 1390, 1396 (8th Cir.1987); *United States v. Love,* 592 F.2d 1022, 1026 (8th Cir.1979).

This court determines from the uncontroverted evidence in relation to Kellin's statement to his attorney that the statement was hearsay, and that it was properly excluded by the trial court even if, as urged by defendant, the trial judge gave the wrong reason for excluding it.

Accordingly, we affirm the judgment of the district court.