**UNITED STATES of America,
Plaintiff,**

v.

**Altedias CAMPBELL, Defendant.**

**No. 01–2002 LRR.**

United States District Court,
N.D. Iowa,
Eastern Division.

Nov. 19, 2003.

Stephanie Marie Rose, US Attorney's Office, Cedar Rapids, IA, for Plaintiff.

Anne M. Laverty, Willey, O'Brien, Mullin, Laverty & Hanrahan, LC, John J.

Bishop, Rick Lee Sole, Glasson, Sole, McManus & Pearson, PC, Cedar Rapids, IA, for Defendant.

## ORDER

READE, District Judge.

The following post-trial motions are before the Court: 1) Defendant's Motion for Judgment of Acquittal and for New Trial (docket 176); and 2) Defendant's pro se Motions (dockets 178,179, 194). The Motions are resisted. A hearing on the Motions was held September 11, 2003. Defendant was personally present at the hearing with counsel Anne Laverty. Assistant United States Attorney Stephanie Rose represented the United States.

After being fully advised the Court rules as follows.

## I. INTRODUCTION

On June 9, 2003, Defendant was convicted by unanimous jury verdict of Counts 1 and 2 of a Superseding Indictment returned March 24, 2003. Count 1 charged that on or about February 10, 2000 Campbell distributed approximately .34 grams of a substance containing "crack" cocaine within 1000 feet of a public elementary school, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 860. Count 2 charged that on or about September 26, 2000, Defendant possessed with intent to deliver 1.66 grams of cocaine base (commonly called "crack cocaine") in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Post-trial motions were filed by defense counsel and Defendant.

## II. ANALYSIS

### A. *Motion for Judgment of Acquittal and for New Trial*

Defendant moves the Court for a judgment of acquittal or for new trial claiming:

1) the Court erred in denying Defendant's Motion to Dismiss Count 1 of the Superseding Indictment for vindictive prosecution; 2) the Court erred in not granting immunity to or in the alternative allowing certain limited testimony of defense witness Sherard Allen; and 3) there was insufficient evidence for the jury to convict Defendant of distribution of crack cocaine within 1000 feet of a school and possession with intent to deliver crack cocaine.

### 1. Acquittal

■ A court may enter a judgment of acquittal on one or more counts "if the evidence is insufficient to sustain a conviction of such offense or offenses." Fed. R.Crim.P. 29(a). A motion for judgment of acquittal can be renewed within seven days after the jury is discharged if the jury returns a verdict of guilty. If the Court sustains the motion, the Court may set aside the verdict and enter a judgment of acquittal. Fed.R.Crim.P. 29(c). Rule 29 "allows the district court very limited latitude; it can neither weigh the evidence nor assess the credibility of witnesses." *United States v. Earles*, 113 F.3d 796, 801 (8th Cir.1997). The trial court can reverse a jury's verdict only if "no reasonable jury could find beyond a reasonable doubt that [the defendant is] guilty of the offense charged." *United States v. Buford*, 108 F.3d 151, 152 (8th Cir.1997) (quoting *United States v. Anderson*, 78 F.3d 420, 422 (8th Cir.1996)). "[A] motion for judgment of acquittal should be denied when, after reviewing the evidence in the light most favorable to the government, there is substantial evidence justifying an inference of guilt as found irrespective of any countervailing testimony that may be introduced." *United States v. Rodriguez*, 812 F.2d 414, 416 (8th Cir.1987). If the court finds reasonable minds might differ as to the result, then there is a fact issue for the jury's resolution and not a matter to be decided by the court as a matter of law. *United States v. Wyant*, 576 F.2d 1312, 1315 (8th Cir.1978).

■ The evidence with regard to Count 1 of the Superseding Indictment included testimony that on February 10, 2000, two narcotics officers acting in an undercover capacity, both of whom were familiar with Defendant and had dealt with him before, observed Defendant met with Sherard Allen, a crack user, at a Blazer parked in the 500 block of Logan Avenue in Waterloo, Iowa. The Blazer was registered to Defendant at a residence on Bratnober in Waterloo. The Bratnober residence is the home of Defendant's estranged wife. Defendant was the sole occupant of the Blazer. The officers observed Allen obtain three rocks of crack cocaine from Defendant and return with it to the officers' undercover car. Sherard Allen turned the crack over to the officers, obtained $50 cash from the officers and returned to Defendant in his Blazer. Officers saw Allen hand something through the window of the Blazer. When Allen returned to the undercover car he no longer had the $50 cash. Allen was arrested by officers and according to evidence first introduced at trial by Defendant, stated that he did not know the man who sold him the crack, but it was "Gushie's brother." "Gushie" is a nickname used by Defendant's brother, Aldreias Campbell. The evidence was Defendant's sibling who most closely resembles him, according to his family, is Xavier Campbell. Xavier was in prison during February 2000. Justin Cole, Defendant's cousin, recognized the officers immediately after the buy and called out warnings, shouting repeatedly "5–0." After Allen's arrest, Defendant's Blazer was located at the Bratnober address in Waterloo. Defendant was stopped in the Blazer after he left his residence. He consented to a search of himself and of the vehicle. No controlled substances or money were locat-

ed.  There was no dispute that the transaction occurred within 1000 feet of Longfellow Elementary School.  Although there was some countervailing testimony that the person in the Blazer on February 10, 2000 was not Defendant, the Court finds the evidence is sufficient to support jury's verdict on Count 1.

■ The evidence on Count 2 of the Superseding Indictment was that on September 26, 2000, during a traffic stop, law enforcement officers found 1.66 grams of crack cocaine, packaged in $20 and $50 rocks, under the driver's seat of the vehicle Defendant was operating.  While Defendant was still seated in the vehicle he was operating and prior to discovering the crack, an officer observed Defendant in the driver's seat of the vehicle bent over with his hands between his legs.  Although Defendant's vehicle was filthy, the baggies of crack were clean and free of dust, supporting the inference that the crack cocaine had recently been introduced to the floorboard.  Narcotics officers testified the quantity and packaging of the crack seized was consistent with distribution of crack.  The officers also testified that the absence of any drug paraphernalia, combined with Defendant's possession of a relatively large amount of cash in the absence of any legitimate employment, also indicated Defendant's involvement in crack distribution.  The jury also could consider the evidence relating to Count 1, which they could have concluded proved that during the same year, Defendant was involved in the sale of identically packaged, similarly sized quantities of crack.  Although Defendant presented testimony that in 2000 he was a crack user, his mother, two of his girlfriends and his mother's former boyfriend all testified they did not know Defendant to consume crack cocaine.  The Court finds sufficient evidence to support the jury's verdict on Count 2 of the Superseding Indictment.

Defendant's Motion for Judgment of Acquittal on Counts 1 and 2 of the Superseding Indictment is denied.

### 2. New Trial

■ A trial court has broad power to grant a motion for new trial for any reason if required "in the interest of justice." *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980).  A new trial may be warranted where the verdict is not supported by the weight of the evidence.  The trial court must weigh the evidence, evaluate the credibility of the witnesses and set aside a verdict only if the evidence weighs enough against the verdict such that a miscarriage of justice may have occurred.  *United States v. Lanier,* 838 F.2d 281, 284–85 (8th Cir.1988).  The burden is on the convicted defendant to show that the court committed error in the trial of the defendant and that the error was prejudicial to him.  If the court's error did not effect the substantial rights of the defendant, the error is considered harmless and must be disregarded.  Fed.R.Crim. P. 52(a); Fed. R.Evid. 103(a).  The United States Court of Appeals for the Eighth Circuit has cautioned that in exercising its wide discretion in deciding whether to grant a new trial in the interest of justice, the trial court should use its authority "sparingly and with caution."  *Lincoln,* 630 F.2d at 1319.

Defendant urges the Court to grant his Motion for a New Trial because the weight of the evidence does not preponderate in favor of the jury's findings of guilt on Counts 1 and 2. As detailed in the section of this opinion on the Motion for Judgment of Acquittal, the evidence does not preponderate sufficiently against the verdict such that the Court concludes a miscarriage of justice occurred.  While it is true the Defendant did not have the serialized "buy" money or drugs on his person when stopped by law enforcement

after the controlled buy on February 10, 2000, this evidence does not preponderate against the verdict on Count 1. The evidence was that after the buy, Defendant's cousin, Justin Cole, gave a verbal warning to those in the area, shouting "5-0," the signal that Allen was in the company of law enforcement. Although Defendant did not live with his wife, he and his vehicle were observed at her residence near the location of the buy moments later. It is reasonable to conclude that Defendant, being tipped off to the presence of law enforcement, disposed of the money and any other drugs, perhaps at the home of his estranged wife. Defendant's assertion that Sherard Allen's professed lack of memory surrounding the February 2000 incident does not support either party's position. With regard to Count 2, the evidence does not preponderate against the jury's verdict of possession with intent to distribute crack cocaine. As discussed herein, Defendant's possession of numerous individually packaged rocks of crack, when combined with the lack of paraphernalia indicative of usage and the relatively large sum of cash, points to an intent to distribute. The fact there were no fingerprints found on the baggie corners does not preponderate against the verdict. Defendant's expert testified that in eighteen years of working at the crime lab, she has never found a useable print from a small plastic baggie corner. Further, there is no legal requirement that fingerprints be found in order to establish guilt. While Defendant is correct there was no evidence anyone saw him with drugs prior to the September 26, 2000 traffic stop, the circumstantial evidence supports the verdict. Defendant's assertion that the vehicle he was driving on September 26, 2000 was not his and that he borrowed the vehicle for the first time that day does not preponderate against the verdict on Count 2. Even if Defendant were to be believed, that does not mean Defendant did not secret the crack under the front seat of the car. With regard to the argument that the quantity of crack is insufficient to support an inference of intent to distribute, the Court disagrees. The case cited by Defendant in support of his position, *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), is not factually on point. In *Turner,* the Court found defendant's possession of 14.68 grams of cocaine, in and of itself, was not enough quantity to establish that the drugs involved were for any other purpose than personal use. *Id.* at 422–23, 90 S.Ct. 642. In the instant case there was other evidence besides quantity that supported the verdict of distribution, including, but not limited to the nature of the packaging, the lack of indicia of personal use of crack by Defendant, the amount of cash on Defendant who was unemployed and the evidence of prior drug dealing admitted on the issue of Defendant's intent.

### a. Prosecutorial Vindictiveness

In connection with his Motion for a New Trial, Defendant again argues the Court should have dismissed the Superseding Indictment because of prosecutorial vindictiveness. The Court's Order dated June 26, 2003 and filed August 5, 2003 addresses this issue.[1] The Court reaffirms its prior ruling.

### b. Testimony of Sherard Allen

Defendant argues the Court should have granted Sherard Allen immunity or, in the alternative, should have admitted Allen's hearsay statement to the defense investigator into evidence.

---

1. The United States District Court for the Northern District of Iowa was going through conversion to electronic filing during summer 2003. Through some error in processing, the Court's Order signed June 26, 2003 did not get filed and docketed. When the error was discovered, the Court resubmitted its order of June 26, 2003 for filing.

Sherard Allen was subpoened by Defendant. He failed to respond to the subpoena and a warrant issued for his arrest. In the meantime, the Court recessed the trial in order to give the United States Marshal and other law enforcement officers an opportunity to apprehend the witness. Allen finally self-surrendered after two and one half days. After conferring with counsel, Allen asserted his fifth amendment right not to testify. According to Allen's attorney, there were three potential areas where Allen's testimony might tend to incriminate him. One area was the statements that were made to local law enforcement in Waterloo, Iowa in connection with his arrest on February 2000, after the buy. The second area was statements he made to the United States Attorney's office in connection with his possible testimony in this case. The third area was the February 2000 drug offense for which he was prosecuted in state court because he could still be prosecuted for that offense in federal court. Because Sherard Allen asserted his right to remain silent under the fifth amendment to the United States Constitution, he was not "available" to testify as defined in Federal Rule of Evidence 804(a)(1).

In an offer of proof, the prosecutor stated that when she interviewed Allen in March 2003, Allen claimed he had no memory of the events of February 10, 2000. The prosecutor decided at that point not to subpoena him as a witness. The United States made the record that it had talked to Allen's parole officer, Sam Black, who stated Allen told him shortly before Allen's disappearance and failure to appear pursuant to the subpoena Defendant wanted him to lie and he was scared of Defendant's family. According to Black, Allen stated that if he came in and testified the way Defendant wanted him to do, he would be prosecuted for perjury. Allen also told Black that if he (Allen) did not testify the way Defendant wanted him to testify,

there was nobody to protect his family and himself from Defendant and his organization.

Defense counsel in her offer of proof stated that Jeff Marlin, an investigator for the defense, talked to Allen on May 9, 2003 and served him with a subpoena for trial. With regard to the February 10, 2000 incident that is the subject of Count 1 of the Indictment, Allen told Marlin he did not remember the vehicle or the person from whom he bought the crack and he may even have difficulty remembering certain other details about the incident. Allen told Marlin he could not describe the individual from whom he bought crack and could not even state whether the person was white or black. Allen told Marlin he does not know anyone named Altedias Campbell. According to Marlin, Allen stated he does not know a "Gushie" and when the police mentioned Gushie's name to him, Allen just played along to get them off his back and said that it was Gushie's brother who sold him the crack. According to Marlin, Allen said that when the federal authorities served a subpoena on him in March 2003, he appeared at the federal courthouse and told them he did not know anything and he did not know anyone named Altedias Campbell.

The Court assisted the attorneys in agreeing to a stipulation that was read to the jury. It read, "If Sherard Allen were called to testify he would testify that he presently has no memory of who sold him the crack cocaine on February 10, 2000, nor the vehicle driven by the person who sold him the crack cocaine on that date. Mr. Allen would further testify he does not know anyone by the name of Altedias Campbell."

Defendant sought a judicial grant of immunity for Allen so that he could testify. The United States Court of Appeals for the Eighth Circuit has consistently refused

to recognize the concept of "judicial immunity," unless a "substantial evidentiary showing is made that the government intended to distort the judicial fact-finder process." *United States v. Washington*, 318 F.3d 845, 856 (8th Cir.2003). The Court does not have the power to grant immunity to any witness without a motion from the United States Attorney General. 18 U.S.C. § 6003. It is within the perogative of the Attorney General to determine if a grant of immunity is "in the public interest" and the district court does not have the authority to compel the prosecutor to request immunity for a defense witness. *Washington*, 318 F.3d at 856. This Court found it did not have the authority to grant judicial immunity without a motion from the Attorney General authorizing such a grant. Because there was no motion, the Court did not grant judicial immunity to Allen.

Defendant sought admission of Allen's prior statement to the defense investigator through the defense investigator as a statement against penal interest under Federal Rule of Evidence 804(b)(3) and the residual hearsay exception found in Federal Rule of Evidence 807. The United States objected to the admission of the statement because of concerns about Allen's truthfulness.

Defendant argues the Court should grant him a new trial because it improperly excluded Allen's statements to the defense investigator that the police officers prompted him to identify the crack seller as "Gushie's brother." Defendant asserts Allen's statements, although admittedly hearsay, were admissible under Federal Rule of Evidence 804(b)(3). Rule 804(b)(3) permits the admission of an out of court declaration against the declarant's penal interest if the following criteria are met: 1) the declarant is unavailable; and 2) the statement at the time of its making so tended to subject the declarant to criminal liability that no reasonable person in the declarant's position would have made the statement unless he believed it to be true. The rule further requires that an exculpatory statement offered by the accused is not admissible unless there are corroborating circumstances that clearly show the trustworthiness of the statement. *United States v. Riley*, 657 F.2d 1377, 1382 (8th Cir.1981). The United States Court of Appeals for the Eighth Circuit recognized that Congress meant to preclude the admission of exculpatory statements against penal interest in the absence of circumstances solidly indicating the trustworthiness of the statements. *United States v. Thomas*, 919 F.2d 495, 498 (8th Cir.1990).

The Court found the statements of Allen to the defense investigator were hearsay and were not admissible under Federal Rule of Evidence 804(b) because at the time of the interview by the defense investigator, Allen was not cognizant he was making statements contrary to his penal interest. Further, the Court found no indicia of trustworthiness in the statement. Finally, the Court noted Allen's initial statement relating to "Gushie's brother" had been introduced by Defendant.

In the case at bar, the Court finds that at the time the statements were made to the defense investigator (which was prior to the time Allen spoke to an attorney about his situation), the statements allegedly made by Allen did not so far tend to subject Allen to criminal liability such that a reasonable person would not have made them unless they were true. Defendant argues that the penal interest implicated would be liability for a potentially false statement to the police. Had Allen's statement to police in February 2000 that "Gushie's brother" sold him the crack been contradicted in Allen's statement to the defense investigator in May 2003, Allen

could not be subjected to making penal liability because of the three-year statute of limitations on making false statements. There was no evidence that at the time Allen made the statement to the defense investigator he thought he would be subject to prosecution for making an out-of-court statement while not under oath to a private investigator. *See United States v. Woolbright,* 831 F.2d 1390, 1395 (8th Cir. 1987) (statement by unavailable witness was not against penal interest where witness was not in any manner aware that what she said was against penal interest); *United States v. Lilley,* 581 F.2d 182, 187–88 (8th Cir.1978) (to extent statement is not against interest, the guarantee of trustworthiness does not exist and the statement should be excluded).

Allen's statement to the defense investigator totally lacked credibility. Allen had given several contradictory statements to Defendant and the government. Allen failed to respond to a trial subpoena and avoided apprehension for several days to avoid testifying. There was an indication Allen felt "caught in the middle" between law enforcement and Defendant and was fearful of testifying.

### 3. Defendant's Pro Se Motions

Defendant filed several motions pro se while represented by his attorney, including his Motion for Cure of Misrepresentation by Government (docket 179) and Motion to Request Hearing on Motion for Cure and Letter to Support Motion for New Trial (docket 178). The United States Court of Appeals for the Eighth Circuit has addressed the issue of represented parties filing pro se motions, finding "[T]here is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel." *United States v. Agofsky,* 20 F.3d 866, 872 (8th Cir.1994). The Eighth Circuit has a policy of refusing to consider pro se filings when a party is represented by counsel. *United*

*States v. Blum,* 65 F.3d 1436, 1443 (8th Cir.1995). Out of an abundance of caution, the Court requested that Campbell's counsel consult with her client concerning his motion. The Court then received a memorandum in support of Defendant's motions authored by his attorney. Accordingly, the Court addresses Defendant's further concerns.

Defendant's filing raises concerns about the alleged statements of missing witness Sherard Allen and Allen's alleged statements to his parole officer Sam Black. In short, Campbell disagrees with the government's representations regarding Black's and Allen's statements. There is nothing in Defendant's filing that has not already been addressed in various other motions or at various other hearings or that is the proper subject of a motion for new trial.

Defense counsel's memorandum (docket 194) states additional reasons why Defendant is entitled to a new trial. First, Defendant argues that the United States should have disclosed to Defendant pretrial under its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that Sherard Allen was subpoenaed to the grand jury in March 2003 and was not used as a grand jury witness because he would not provide helpful information to the prosecution of the case. Second, Defendant asserts that the government vindictively threatened Allen with perjury or false statement charges if Allen testified to anything different than he originally told officers on February 10, 2000. Third, Defendant argues Hon. Michael Melloy found, in the District Court Order of December 23, 2002, there is a "reasonable probability" of an acquittal on the charge of possession with intent to distribute, if FBI Agent Gray's testimony and evidence of Defendant's acquaintance with Dentonious Washington was excluded. Lastly, Defen-

dant claims he is entitled to a new trial because of ineffectiveness of his counsel as detailed in the hearing of August 5, 2003. These additional arguments are addressed in turn.

### a. Alleged violations under *Brady v. Maryland*

■ With regard to the alleged violations under *Brady v. Maryland,* the Court finds no such violations occurred. Without question, it is the government's obligation to divulge all evidence that is favorable to the defendant that impacts either the guilt or punishment phases. *Id.* To establish a *Brady* violation, the defendant must demonstrate three factors: first, the government suppressed evidence; second, the evidence was favorable to the accused; and third, the evidence was material. *Dye v. Stender,* 208 F.3d 662, 665 (8th Cir.2000). Even where a *Brady* violation is found, that does not necessarily mean that a conviction will be overturned. A violation of *Brady* will only result in a reversal of a conviction if the violation was prejudicial and was not harmless error. *Id.*

■ Defendant's argument that a new trial is required because of *Brady* violations is without merit. The Court finds Sherard Allen did not provide any exculpatory information to the United States prior to trial. At best what he provided was neutral. In his interview of March 21, 2003, he told the prosecutor and law enforcement he had no memory of the events of February 10, 2000 and he could not say one way or the other if Defendant was the person who sold him the crack. Thus, his statements were not "material either to guilt or to punishment." According to the United States, defense counsel was made aware both before and during trial of Allen's interview in March 2003 and his loss of memory. The government's attorney contends it was her suggestion that led to a defense investigator contacting Allen. Defense counsel has not disputed the gov-

ernment's representations. The Court also notes Allen told the defense investigator in May 2003, before the trial, he had told the government he had no memory of the events of February 10, 2000 or who sold him the crack. Even assuming the prosecutor is incorrect in asserting defense counsel was aware of Allen's loss of memory before May 2003, defense counsel learned of Allen's memory problems before trial. In fact, the parties entered into a stipulation to that effect which was read to the jury during trial. The United States had no duty to disclose to Defendant evidence he already possessed. *United States v. Gonzales,* 90 F.3d 1363, 1368 (8th Cir.1996) ("[T]he government need not disclose evidence available to the defense from other sources or evidence already possessed by the defendants."). In any event there has been no showing by Defendant that the proceedings would have been different had the timing of the disclosure of this information been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (in order to obtain a new trial for a *Brady* violation, the defendant must prove that the result of the proceeding would have been different had the evidence been disclosed to the defense).

### b. Alleged Misrepresentations by the Prosecutor Concerning Black's Statements

The Court finds no basis to grant a new trial on the grounds the prosecutor incorrectly stated what Sam Black stated to her. There is no evidence of any misrepresentation by the prosecutor.

### c. Alleged Threats to Prosecute Allen

The Court finds no basis to grant a new trial on the grounds the prosecutor vindictively threatened to prosecute Allen for perjury if he testified to anything different than he originally told officers on Febru-

ary 10, 2000. There is no evidence or any suggestion of evidence that the prosecutor or law enforcement made any such threats to Allen. The Court has already ruled on Defendant's Motion to Dismiss the Superseding Indictment because of prosecutorial misconduct and found the Motion to be without merit.

### d. Statements in Judge Melloy's New Trial Order

The Order for New Trial filed by Judge Melloy on December 23, 2002 is no basis for ordering a new trial in this case. Judge Melloy's statements were made in the context of determining whether a new trial was warranted based on newly discovery evidence. The statement s were made prior to the June 2003 trial and related to evidence in the prior trial and not the evidence introduced in Defendant's most recent trial.

### CONCLUSION

For the reasons stated above the Court rules as follows:

1. Defendant's Motion for Judgment of Acquittal and for New Trial (docket 176) is denied. This includes the arguments raised in Defendant's Memorandum of Law In Support of Pro Se Motions (docket 194).

2. Defendant's Pro Se Motion for Cure of Misrepresentation by the Government (docket 179) and Motion for Hearing (docket 178) are denied.

3. The Clerk shall show all motions filed through November 1, 2003 satisfied.

**IT IS SO ORDERED.**