DAVID MOORE v. THE STATE.

No. 15908. Delivered May 3, 1933.
Rehearing Denied May 31, 1933.
Reported in 60 S. W. (2d) 453.

The opinion states the case.

*Terry Dickens* and *Tom B. Bartlett*, both of Marlin, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Assault with intent to murder is the offense; penalty assessed at confinement in the penitentiary for one year.

Connally Grayson was struck on the head with a baseball bat in the hands of the appellant, David Moore. The blow caused what the doctor called a "depressed fracture of the skull." Grayson was rendered unconscious by the blow, and an operation became necessary. He was in the hospital for twelve days and under treatment for two months.

Grayson was at a baseball game. Moore came to Grayson and told him to move. Grayson said, "All right." Moore said: "Well, I mean for you to get up and get away." Moore then walked away, but later came back. Grayson was sitting with his hands over his knees and his back to Moore. Moore said: "Didn't I tell you to get up from here?" As Grayson started to get up and leave, he was struck with a bat. They had no previous ill feelings. The injury was inflicted on May 11th. Grayson remained unconscious for many days. The blow was struck on the left side of the head, just above the ear.

Moore's statement in the way of a confession is as follows: "My name is David Moore. I live here in Marlin. I hit a boy with a ball bat down in the Emerson Addition on Commerce Street at a ball game. I was keeping the crowd back from the base lines, and I had tried to get this boy to get back at least three times. The last time I told him to get back he said, 'God damn it, I am not going to get back,' and it looked like he was making an attempt to get up and that is when I hit him. In a way it was through passion. These town boys cut one another up so and I did not know what he might do. I did not see any knife on him. He just made a move to get up and said that he was not going to get back. He did not put his hands in his pocket or anything like that. I know this boy when I see him but I do not know his name."

Appellant testified that he was forty-three years of age and a native of Falls County. It appears from his testimony that it was agreed that he would assist those who were playing baseball to keep the women and children from getting on the base lines where some of them might get hurt; that he was trying to keep them back off the lines. From his testimony we quote: " * * * and I passed by this boy first—he was standing up and I said, 'Man, get back off the line,' and I didn't pay him any attention. There were four or five boys acting pretty hard and so they asked me again to get the crowd off the lines, and I came back and they were sitting down on the line, and I said, 'Fellows, you ought to get back off the line; you can't sit down there,' and this boy remarked, 'I am sitting down here,' and I said, 'We are going to lift you back,' and Willie Smith and myself lifted him back; and he said, 'Is this your brother? He don't know who he is fooling with,' and I saw he was getting mad, and he went back and sat on the line, and I decided I wouldn't fool with him any more—I thought one or two wouldn't hurt, and this man and the others crowded up, and I went back to third base and Ernest Frazer was crowding up, and they couldn't see the baseman; and I said, 'You ought to

get off the line, and he said, 'Make that crowd back yonder get off,' and I said I would go back and see, and I spoke to one of the boy players, 'Charlie, will you get off the line; if not, get back close to the other peoples' feet,' and he finally drug back close to where he should, and I turned away from him and walked to this boy and I said again, 'You have to get back,' and he said, 'God damn you, I have already told you that I am not going to get back,' and so I hauled back and hit him. I didn't aim to hit him or hurt him, but when he said, 'God damn you, I done told you I ain't going to get off' and started up—I guess there was over a hundred people there, and it was wet. They had played two or three days. Every day they played the crowd was getting bigger and bigger, and they rushed the line, and that is why we suggested to him to keep well back."

In bill of exception No. 1, it appears that the appellant sought to make proof of his general reputation for truth and veracity. The bill is qualified with the following statement: "At the time the testimony the defendant had not testified and no effort whatever had been made to impeach him."

Bill No. 2 is a special charge requested to the effect that if in striking the blow the appellant had no intent to injure Grayson, or if the jury had a reasonable doubt upon that subject, they would acquit. The refusal of the charge is not regarded as error, considered in the light of the uncontroverted facts showing the assault and the injury inflicted.

Bill No. 3 complains of the refusal of a special charge on the issue of self-defense. The subject was fully covered in the main charge.

Bill No. 4 complains of the refusal of a special charge to the effect that, in considering the guilt or innocence of the accused, the jury must determine all the surrounding circumstances at the time of the difficulty and determine whether the appellant acted with malice. The verdict eliminates malice, stating that the conviction is for assault to murder without malice, and assessing against the appellant the lowest penalty allowed by law for assault to murder.

Bill No. 5 complains of the refusal of a special charge to the effect that, the state having introduced the confession of the appellant, it was bound by any exculpatory statements therein. We have perceived no exculpatory statements in the confession. "Exculpatory" is defined as "clearing, or tending to clear, from alleged fault or guilt; excusing." (Webster's New International Dictionary.) Nothing is shown in the confession of the appellant introduced by the state which would justify or excuse the assault with a weapon producing the injury which the un-

disputed evidence shows was inflicted upon Grayson by the appellant.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant was convicted for assault to murder without malice and given the lowest penalty, and we affirmed the case. He moves for rehearing on the ground that it was reversible error for the court to fail to charge on simple assault. In view of the fact that the court did submit the law of aggravated assault, which is the next lower degree of assault included in an assault to murder, and by their verdict the jury clearly evidenced an unwillingness to find appellant guilty of an offense less than an assault to murder, it would be difficult for us to see how appellant could contend that he would have been benefited by the giving of a charge on the law of simple assault,—a still lower grade than aggravated assault.

The motion for rehearing will be overruled.

*Overruled.*