336

52 A.3d 980

**TJ Sharocko JACKSON**

v.

**STATE of Maryland.**

**No. 01159, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Sept. 5, 2012.

338

David M. Simpson, Greenbelt, MD (C. Todd M. Stewart, Upper Marlboro, MD), on the brief, for appellant.

Daniel J. Jawor (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WOODWARD, WRIGHT, HOTTEN, JJ.

HOTTEN, J.

Appellant, TJ Sharocko Jackson, was indicted in the Circuit Court for Prince George's County for murder and related charges arising out of a home invasion.[1] Appellant elected a

---

1. In total, appellant was indicted with first degree murder, felony murder, second degree murder, attempted murder, conspiracy to commit murder, five counts of first degree assault, conspiracy to commit

jury trial, and the jury found him guilty on many, but not all of the charges.[2] The circuit court sentenced appellant to life imprisonment, plus ten years. Appellant timely appealed, presenting the following argument for our review:

> The Trial Court erred in disallowing a written statement of an unavailable declarant, when the appellant sought its admittance as a declaration against penal interest pursuant to Rule 5–804(b)(3).

For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

Appellant and Jamar Jones were charged with a multitude of crimes arising out of a home invasion on June 19, 2008, in which appellant and Mr. Jones allegedly broke into an apartment to steal drugs. The apartment was known as a "stash house," where drug dealers stored their inventory. According to the State, appellant and Mr. Jones drove a van to the apartment. They entered the apartment and encountered three individuals. Appellant and Mr. Jones stole illegal drugs from the individuals in the apartment, but the target of the robbery, an individual known as "G," was not present. Appellant and Mr. Jones then duct taped the three individuals and secured them in the rear of the van, before searching for "G." After an unsuccessful search, they returned to the apartment. Mr. Jones reentered the apartment, bringing one of the other individuals with him, to resume the search for "G." "G" later

---

first degree assault, five counts of use of a handgun in the commission of a crime of violence, robbery with a deadly weapon, conspiracy to commit robbery with a deadly weapon, three counts of kidnapping, conspiracy to kidnap, first degree burglary, and conspiracy to commit first degree burglary.

2. The jury found appellant guilty of felony murder, second degree murder, conspiracy to commit first degree murder, three counts of first degree assault, conspiracy to commit first degree assault, four counts of use of a handgun in a crime of violence, robbery with a deadly weapon, conspiracy to commit robbery with a deadly weapon, two counts of kidnapping, conspiracy to commit kidnapping, first degree burglary, and conspiracy to commit first degree burglary.

returned to the apartment with Andre Green. As they entered, Mr. Jones shot and killed "G" and wounded Mr. Green. Mr. Jones exited the apartment, whereupon he and appellant fled in the van.

Prior to appellant's trial, but after Mr. Jones had pled guilty in his severed trial, the State filed a motion in limine, requesting that the circuit court bar the admission of Mr. Jones's signed statement to appellant's defense counsel. In the statement, which Mr. Jones gave a day after the alleged incident, he indicated that appellant was not present during the commission of the crimes and was not involved in the home invasion. Mr. Jones's statement also suggested that he may have shot the victims in self-defense. Counsel for Mr. Jones indicated that he anticipated that Mr. Jones would invoke his Fifth Amendment privilege against self-incrimination when asked about the events on June 19, 2008 at appellant's trial.[3] In its consideration of the motion in limine, the circuit court reviewed the statement and heard *in camera* testimony from Mr. Jones and a law clerk for appellant's defense counsel, concerning Mr. Jones's written statement.

Mr. Jones's statement, which was handwritten on eight pages from a legal pad by appellant's defense counsel, signed by Mr. Jones, and later transcribed, provided:

> This is a statement of Jamar Tonio Jones, dob 7/1/88, SSN ... of ... Martin Road in Brandywine, MD given on Friday, June 20, 2008 at 4:30 pm to Attorney Jon Norris and his law clerk Kathey Gravely, in Mr. Norris' office at 503 D Street, NW, Washington, DC. Mr. Norris and Ms. Gravely represent Mr. T.J. Sirroco [sic] Jackson.

> On Thursday, June 19, 2008 around noon I was present at the apartment in Walker Mill when 2 people were shot. I went to the apartment with my friend Darren Johnson. TJ Jackson was not at the apartment when the shooting oc-

---

**3.** Mr. Jones pled guilty on January 18, 2011, and testified at the hearing on the State's motion in limine regarding appellant's trial on March 28, 2011, outside the window during which Mr. Jones could appeal his plea.

curred. Darren and I went to the apartment because one of the guys in the apartment owed Darren some money for drugs. Darren said the guy owed him money for coke, cocaine. Darren asked me to go along with him so he could holler at the guy that owed him money. Darren and I were the only 2 who went to the apartment. The apartment, The apartment [sic] was in the 6600 block of Roland Road just off of Walker Mill Road.

When Darren and I got there, there were three people in the apartment. All 3 were brown skinned, lighter than me. I did not know any of them. They opened the door and let us in. Darren went in the back with one of the guys. The guy that went with Darren was short and heavy set. When they were in the back I stayed in the front room with the other 2 guys. When Darren and the other guy came out I heard them arguing. I could tell it was about drugs and money. Darren stumbled, he may have been pushed, I grabbed him to get out of there. One guy was by the door, blocking it, the door. One guy was by the couch. The guy by the door was reaching for something. I thought he was going for a gun so I pulled out my gun, a Glock 9 mm, and I started shooting, we ran out. I don't know if I hit anyone. Darren and I run to the van on the way to the van there was an older lady and a man outside. Darren grabbed them and pushed them in the van. At no time when this happened was T.J. Jackson around. I get in the van and I drive. I tell Darren that they can't stay in the van. Somewhere I stop and push the people out of the van. I drive Darren to D.C. and drop him off. I drive back into Maryland and I go to a house to look for my friend T.J. Jackson. When I found TJ I told him what happened, I told TJ to get in the van with me, because I needed to talk with him. As we drove I told him a little bit. I told him that a situation went bad and I had to start shooting. I wanted to go tell my father but he wasn't there. The van was parked by my Dad's house on the grass on the side. The Martin Road House. The police came to my house[;] when I saw them I started running. TJ started running behind me. We ran

for a while, when we saw some workers we got them to give us a ride. That was my idea. They gave us a ride to a friend's house on Frank Tippet Road. TJ Jackson was not involved in this shooting. He did not know that it was going to occur.

This 8 page statement is true and accurate to the best of my knowledge. I swear under penalty of perjury that it is true and accurate. I knew that I am making a statement against my penal interest which could be used against me. It is true and correct.

During his *in camera* testimony, Mr. Jones stated that he committed the crimes to which he had already pled guilty.[4] He indicated that the day after the commission, he and appellant went to defense counsel's office, where Mr. Jones told defense counsel what occurred, including the shooting of "G" and Mr. Green. He recalled being in defense counsel's office, but did not recall defense counsel's law clerk also being present. Mr. Jones confirmed that he related the events to defense counsel, without appellant being present. He signed the statement, which defense counsel transcribed as Mr. Jones detailed the events, periodically confirming that the statement matched Mr. Jones's recollection.

In response to questioning from the circuit court, Mr. Jones recognized that he gave a statement to defense counsel, but averred that the statement was "not true." In response to questioning from the State, Mr. Jones indicated that appellant suggested they go to defense counsel's office. A friend of appellant drove appellant and Mr. Jones to the office, because Mr. Jones knew that the police were looking for him and possibly his van. Appellant did not advise Mr. Jones that defense counsel represented appellant, but Mr. Jones knew that they were going to see defense counsel concerning the shooting. He and appellant went into the office, but Mr.

---

**4.** Mr. Jones pled guilty to first degree murder, use of a handgun in a crime of violence, first degree assault, and kidnapping. The State recommended, and the court accepted, a life sentence with all but twenty-five years suspended.

Jones spoke with defense counsel outside of appellant's presence. He stated that defense counsel took notes while he detailed the events. Furthermore, he stated that he spoke with defense counsel in an effort to seek representation and that appellant agreed to pay for the representation because Mr. Jones did not have any money. He maintained that he did not meet with defense counsel to help appellant, but rather to help himself. He believed that providing the statement would not subject him to further risk of being criminally charged. He did not understand what giving "a declaration against penal interests" meant. He was a high school graduate, but did not write the statement himself nor did anyone ask him to. Instead, defense counsel wrote the statement as Mr. Jones described the events, without defense counsel explaining possible legal defenses or indicating that he represented appellant. Mr. Jones stated that defense counsel read the statement to him, and he signed at the bottom after skimming through it.

When asked where he obtained the information provided to defense counsel, Mr. Jones responded that he "made it up." He refused to answer whether he gave the statement to keep appellant out of trouble, but indicated that at the time of the statement, he did not have a place to stay, other than with appellant. He maintained that he was not afraid of appellant.

On redirect by defense counsel, Mr. Jones acknowledged that almost three years had elapsed since he visited defense counsel's office. Still, even with the aid of his statement, he did not recall anyone other than defense counsel being present when he provided the statement. Mr. Jones recognized that defense counsel gave him the name and business card of another attorney, but indicated that this occurred after he gave the statement. Mr. Jones stated that defense counsel did not give him legal advice. Again, he concluded that appellant did not threaten him and that he was not afraid of appellant.

The circuit court then heard *in camera* testimony from defense counsel's former law clerk, who indicated that she

worked for defense counsel on the occasion that appellant and Mr. Jones came to the office. It was her first time meeting Mr. Jones, but appellant indicated to her that Mr. Jones needed to speak to a lawyer. After appellant left the office, defense counsel and his law clerk conversed with Mr. Jones. The law clerk indicated that defense counsel stated that he represented appellant, and would not be able to give Mr. Jones any legal advice. Defense counsel also gave Mr. Jones the name and telephone number of another qualified criminal defense lawyer. In response to defense counsel's inquiry whether Mr. Jones wanted to speak to a lawyer, the law clerk averred that Mr. Jones was adamant that he wanted to talk to defense counsel and not a different lawyer. After Mr. Jones divulged the events of the previous day, defense counsel asked him to go through the story again and wrote down what Mr. Jones said. The law clerk indicated that Mr. Jones agreed that defense counsel's notes accurately reflected his story and that Mr. Jones did not appear to be threatened, coerced, or intimidated in anyway when giving the statement. Defense counsel explained a statement against penal interest to Mr. Jones, who appreciated the significance, did not have any objections to the statement, and signed it, swearing to its accuracy.

On cross-examination by the State, the law clerk elaborated that defense counsel's firm had an existing relationship with appellant and that defense counsel explained the theory of a declaration against penal interest to Mr. Jones in plain English, as opposed to legalese. She maintained that Mr. Jones understood that his statement could be used at trial. In fact, the law clerk explained that Mr. Jones's willingness to speak with appellant's attorney seemed "very odd" in her opinion, but he was "very insistent and adamant about wanting to give a statement to [defense counsel]." Additionally, she elaborated that Mr. Jones was not afforded the opportunity to write the statement himself because, in her training and experience and that of defense counsel, it is more efficient, easier for the declarant to modify, and has better "fluidity" and structure when the attorney writes the declarant's statement, and then

gives the declarant an opportunity to review it with the attorney to make any deletions or corrections. Here, Mr. Jones reviewed the statement. He made no changes and signed it. The State pressed the law clerk on whether Mr. Jones actually described the events employing the vernacular used in the statement, and the law clerk conceded that Mr. Jones gave his statement in a "give and take" with defense counsel, implying a back and forth conversation. She concluded that she and defense counsel explained that they represented appellant, and not Mr. Jones, but that Mr. Jones gave the statement, apparently in an effort to aid appellant.

The circuit court considered argument on the application of Maryland Rule 5–804(b)(3) and granted the State's motion in limine. The court discerned that Mr. Jones's statement was not truly inculpatory because Mr. Jones included references to acting in self-defense in response to another man in the apartment "reaching for something" that Mr. Jones thought was a gun during an argument. The court also mentioned that the statements regarding appellant were collateral to the statement as a whole. Finally, the court determined that Mr. Jones's accounts of the shooting widely varied, between the statement in defense counsel's office, the statement of facts at Mr. Jones's plea hearing, and his statement to the circuit court that the statement he made in defense counsel's office was fabricated.[5] While the court did not question the veracity of the accounts from defense counsel and his law clerk of Mr. Jones's statement in defense counsel's office, it did not find Mr. Jones's statement to be trustworthy or adequately corroborated. The court questioned the accuracy of Mr. Jones's statement in light of the fact that appellant brought Mr. Jones to defense counsel's office, defense counsel's representation of appellant, and Mr. Jones's statement that appellant agreed to

---

5. Appellant refers us to the transcript of Mr. Jones's plea hearing, in which the statement of facts underlying the plea indicated that he and appellant committed the charged crimes together. The circuit court also presided over Mr. Jones's plea hearing and, therefore, was aware of the factual predicate underlying the plea during the proceedings in appellant's case.

pay for Mr. Jones's legal representation. Moreover, other evidence in the record indicated that appellant and Mr. Jones were working together the day of the incident, further calling into question the trustworthiness of Mr. Jones's statement to defense counsel that appellant was not present that day.

## MARYLAND RULE 5–804 AND STANDARD OF REVIEW

Maryland Rule 5–804, in pertinent part, provides:

**Rule 5–804. Hearsay exceptions; declarant unavailable.**

(a) **Definition of unavailability.** "Unavailability as a witness" includes situations in which the declarant:

\* \* \*

(2) refuses to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;

\* \* \*

(b) **Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \*

(3) Statement against interest. A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest, so tended to subject the declarant to civil or criminal liability, or so tended to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. *A statement tending to expose the declarant to criminal liability and offered in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.*

(Emphasis added).[6]

■ "The underlying theory of this exception is that 'persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true.'" *State v. Standifur*, 310 Md. 3, 11, 526 A.2d 955 (1987) (quoting Fed.R.Evid. 804(b)(3) advisory committee note); *accord West v. State*, 124 Md.App. 147, 167, 720 A.2d 1253 (1998) (quoting 6 Lynn McLain, *Maryland Evidence* § 804(3).1 at 467) (other citations omitted) ("The rationale for admission of such statements is that 'there is a circumstantial guarantee of sincerity when one makes a statement adverse to one's interest.'"); *see also* Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 802[E] (4th ed.2010) ("This exception is based on the theory that it is unlikely that a person will make a false statement that could be used to bring about ... a loss of his [or her] liberty.).

■ For a statement to be admissible under Rule 5–804(b)(3), the proponent of the statement must convince the trial court that "'1) the declarant's statement was against his or her penal interest; 2) the declarant is an unavailable witness; and 3) corroborating circumstances exist to establish the trustworthiness of the statement.'" *Stewart v. State*, 151 Md.App. 425, 447, 827 A.2d 850 (2003) (quoting *Roebuck v. State*, 148 Md.App. 563, 578, 813 A.2d 342 (2002)). "The proponent of the declaration has the burden 'to establish that it is cloaked with 'indicia of reliability[,]' ... mean[ing] that

---

6. A 2010 amendment of Rule 5–804, which is derived from Federal Rule of Evidence 804, substituted "offered in a criminal case" for "to exculpate the accused" in the second sentence of Rule 5–804(b)(3). The change paralleled a 2010 amendment to Federal Rule of Evidence 804(b)(3), providing that the corroborating circumstances requirement applies to all declarations against penal interest offered in criminal cases, regardless of the proponent. The Advisory Committee noted, "A unitary approach to declarations against penal interest assures both the prosecution and the accused that the Rule will not be abused and that only reliable hearsay statements will be admitted under the exception." Fed.R.Evid. 804(b)(3) advisory committee note. As such, the portion of Rule 5–804(b)(3) that requires "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement" for the statement to be admissible is particularly relevant to this case.

there must be a showing of particularized guarantees of trustworthiness.' " *Id.* (quoting *West,* 124 Md.App. at 167, 720 A.2d 1253) (other citations omitted).

 "The trial court's evaluation of the trustworthiness of a statement is 'a fact-intensive determination' that, on appellate review, is subject to the clearly erroneous standard." *Id.* (quoting *State v. Matusky,* 343 Md. 467, 486, 682 A.2d 694 (1996)) (citing *Powell v. State,* 324 Md. 441, 453, 597 A.2d 479 (1991); *Wilkerson v. State,* 139 Md.App. 557, 576–77, 776 A.2d 685 (2001)). Then, like other exceptions to the hearsay bar, " 'admissibility is a question addressed exclusively to the discretion of the trial judge.' " *Wilkerson,* 139 Md.App. at 577, 776 A.2d 685 (quoting *Jacobs v. State,* 45 Md.App. 634, 653, 415 A.2d 590 (1980)).

## DISCUSSION

 According to appellant, Mr. Jones's statement exculpated appellant and was admissible as a statement against penal interest pursuant to Maryland Rule 5–804(b)(3), so the circuit court committed reversible error when it ruled that the statement was inadmissible.[7] For the sake of the circuit court's ruling on the statement's admissibility, Mr. Jones was "unavailable" under Rule 5–804(a)(2) in light of the anticipated assertion of his Fifth Amendment privilege if asked about the events of June 19, 2008 at appellant's trial, despite the circuit court's admonishments. *See Wilson v. State,* 334 Md. 313, 333–34, 639 A.2d 125 (1994). However, Mr. Jones's statement suggested that he discharged a firearm in self-defense and

---

**7.** Even though it would not have been binding on the circuit court, appellant contends that the State agreed with appellant that Mr. Jones's statement was a statement against interest on two occasions in the record. However, a review of the record clarifies that, in both instances cited by appellant, the State "concede[d]" and "agree[d]" that the *issue* at hand was whether Mr. Jones's statement was admissible as a statement against interest. As such, the State did not "concede" or "agree" that Mr. Jones's statement was admissible as a statement against interest, but rather elucidated the question presented to the circuit court.

that he did not participate in or assist with "Darren Johnson's" criminal activity. Therefore, we point out, and the circuit court recognized, that there are issues regarding whether Mr. Jones's statement actually tended to subject him to criminal liability for the murder under Rule 5–804(b)(3), and whether he actually appreciated the statement's impact on his liberty. *See* Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 802[E] (4th ed.2010) ("The trial judge must first be satisfied that the statement was in fact against the declarant's interest and that the declarant actually understood that his statement could indeed cause him [or her] a loss of property, money, or liberty."). Nevertheless, the crux of the circuit court's analysis, and thus appellant's appeal, was whether appellant presented corroborating circumstances that clearly indicated the trustworthiness and reliability of Mr. Jones's statement.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5–801. Due to its inherent untrustworthiness, and the preference for in-court testimony that is subject to cross-examination, hearsay "is not admissible" unless "otherwise provided by [the Maryland Rules] or permitted by applicable constitutional provisions or statutes." *See* Md. Rule 5–802. Clearly, Mr. Jones's transcribed statement to defense counsel is hearsay.

This Court has stated:

> The correct procedural posture is, "Hearsay will be *excluded,* unless the *proponent* demonstrates its probable *trustworthiness.*" Affirmative evidence of trustworthiness, moreover, contemplates something more than the absence of evidence of untrustworthiness. The likelihood of a motive to speak truthfully requires more than the unlikelihood of a motive to lie. Were it otherwise, the nothing-to-nothing ties on these issues would go to the exception rather than to the rule.

*Cassidy v. State,* 74 Md.App. 1, 8, 536 A.2d 666 (1988).

"[T]he declaration against penal interest is not—as a matter of Maryland evidence law—a 'firmly rooted' exception

to the rule against hearsay," but it has been adopted as an exception in Maryland Rule 5–804(b)(3). *Matusky*, 105 Md. App. at 398, 660 A.2d 935 (quoting *Simmons v. State*, 333 Md. 547, 557–59, 636 A.2d 463 (1994)). "[A] declaration against penal interest is 'presumptively unreliable.'" *Id.* (quoting *Wilson*, 334 Md. at 335, 639 A.2d 125). However, that presumption may be rebutted if the hearsay statement "bear[s] adequate 'indicia of reliability' to be admissible." *Wilson*, 334 Md. at 335, 639 A.2d 125 (citing *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)). Additionally, the Supreme Court has held that a trial court "must exclude whatever non-self-inculpatory statements are contained in an otherwise admissible declaration against penal interest." *Matusky*, 105 Md.App. at 398, 660 A.2d 935 (citing *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)).

As mentioned, the proponent of a statement under Rule 5–804(b)(3) "has the burden to establish that [the statement] is cloaked with 'indicia of reliability[,]' ... mean[ing] that there must be a 'showing of particularized guarantees of trustworthiness.'" *Stewart*, 151 Md.App. at 447, 827 A.2d 850 (quoting *West*, 124 Md.App. at 167, 720 A.2d 1253). "The corroboration requirement serves to deter 'criminal accomplices from fabricating evidence at trial.'" *Roebuck*, 148 Md. App. at 580, 813 A.2d 342 (quoting *United States v. Camacho*, 163 F.Supp.2d 287, 299 (S.D.N.Y.2001)). However, "there is no litmus test that courts must follow to establish adequate corroboration or trustworthiness." *Id.* "Ultimately, it is 'within the trial court's discretion to determine whether the evidence was sufficiently reliable for admissibility.'" *Stewart*, 151 Md.App. at 447, 827 A.2d 850 (quoting *Wilkerson*, 139 Md. App. at 577, 776 A.2d 685).

In *Gray v. State*, 368 Md. 529, 796 A.2d 697 (2002), the Court of Appeals addressed Rule 8–504(b)(3) and its application where, as in this case, a defendant sought admission of the declaration against penal interest. In that case, the defendant was charged with murdering his wife, who had been

shot and stabbed. *Id.* at 532, 796 A.2d 697. According to the defendant, his wife's lover, Brian Gatton, was the true perpetrator. The defendant posited that Mr. Gatton previously told another woman, Evelyn Johnson, that the defendant's wife was his girlfriend, and that after the murder, Mr. Gatton intimated to Ms. Johnson that he killed the defendant's wife. *Id.* at 533–34, 796 A.2d 697. The defendant subpoenaed Mr. Gatton to testify, but Mr. Gatton invoked his Fifth Amendment right against self-incrimination. *Id.* at 534, 796 A.2d 697. As such, the defendant sought to offer Mr. Gatton's statements that he killed the defendant's wife through Ms. Johnson as declarations against penal interest. *Id.* The State claimed that Ms. Johnson was not credible, and the trial court refused to admit Mr. Gatton's statements as declarations against penal interest, which this Court affirmed. *Id.* at 536–37, 796 A.2d 697.

The Court of Appeals reversed. *Id.* at 537, 796 A.2d 697. The court noted that "the defendant's constitutional right to confront the witnesses *against* him [was] not implicated" because the defendant was offering the declaration. *Id.* at 538, 796 A.2d 697. Yet, the Court concluded that the trial court invaded the province of the jury by determining Ms. Johnson's credibility. *Id.* at 544–45, 796 A.2d 697. The Court reiterated that to be admissible pursuant to Rule 5–804(b)(3) "a declarant's inculpatory statement that exculpates an accused need[s] corroboration." *Id.* at 545 n. 11, 796 A.2d 697. The Court summarized:

> [A] trial judge considering the admission of a hearsay statement offered as a declaration against penal interest must carefully consider the content of the statement in the light of all known and relevant circumstances surrounding the making of the statement and all relevant information concerning the declarant, and determine whether the statement was in fact against the declarant's penal interest and whether a reasonable person in the situation of the declarant would have perceived that it was against his penal interest at the time it was made. The trial judge should then consider whether there are present any other facts or

circumstances, including those indicating a motive to falsify on the part of the [out-of-court] declarant, that so cut against the presumption of the reliability normally attending a declaration against interest that the statements should not be admitted. A statement against interest that survives this analysis, and those related statements so closely connected with it as to be equally trustworthy, are admissible as declarations against interest.

*Id.* at 544, 796 A.2d 697 (quoting *Standifur,* 310 Md. at 17, 526 A.2d 955).

The Court discerned that the defendant had presented sufficient corroboration to allow the admission of Mr. Gatton's statement against penal interest. *Id.* at 545–47, 796 A.2d 697. Specifically, Mr. Gatton and the defendant's wife had been romantically involved, creating a "love triangle" between Mr. Gatton, the defendant, and his wife; Mr. Gatton possessed jewelry similar to that worn by the defendant's wife; Mr. Gatton used Ms. Johnson to pawn some of the jewelry; Mr. Gatton displayed a small handgun and a hunting knife when he made the statements to Ms. Johnson; and the victim was shot and stabbed. *Id.* at 545–46, 796 A.2d 697. As such, the Court concluded:

Under the circumstances here present, [the defendant] was entitled to present his defense, *i.e.,* that Gatton killed [the defendant's wife]. When Gatton, through the invocation of his right to remain silent became unavailable, [the defendant] was, under the facts of this case, entitled to present to the jury Gatton's declarations against penal interest through the person that allegedly heard the declarations, Evelyn Johnson. Under the circumstances here present, it was error to deny their admission.

*Id.* at 547, 796 A.2d 697.

After *Gray,* this Court decided *Roebuck, supra,* 148 Md. App. at 569, 813 A.2d 342, in which the defendant and his cousin were both charged with murdering a young victim with a knife and gun. In a custodial interrogation, the defendant indicated that he gave a gun to his cousin, but that the cousin

killed the victim. *Id.* at 570, 813 A.2d 342. The cousin, also in a custodial interrogation, confessed to the crime, but claimed that the defendant "physically" tried to "stop" him during the attack. *Id.* In the cousin's trial, the State used the cousin's statement against him, and he was convicted. *Id.* at 571, 575, 813 A.2d 342. At the defendant's trial, the cousin refused to testify because his appeal was pending, so the defendant sought to introduce the cousin's custodial statement as a declaration against penal interest. *Id.* at 571–72, 813 A.2d 342. The trial court ruled that the statement was not sufficiently corroborated to render it trustworthy and barred its admission as a declaration against interest. *Id.* at 575, 813 A.2d 342.

We relied on *Gray* and determined that the trial court erred. *Id.* at 590, 813 A.2d 342. At trial, the State theorized that the defendant aided and abetted the murder by giving the gun to his cousin, who, in turn, killed the victim. *Id.* at 592, 813 A.2d 342. The State's theory and the trial court's ruling on admissibility, however, ignored evidence that corroborated the cousin's statement. *Id.* at 592–93, 813 A.2d 342. The cousin's statement was made during a custodial interrogation, after police had advised the cousin of his constitutional rights. *Id.* at 593, 813 A.2d 342. A key State witness indicated that he drove the defendant, the cousin, and the victim to the area where the murder occurred, and drove the defendant and the cousin away from the area. *Id.* We also discerned significance from the fact that the cousin's statement was the subject of a motion to suppress in his case, which the lower court denied. *Id.* Moreover, the State regarded the cousin's statement as being reliable, introducing it into evidence at the cousin's trial. *Id.* at 593–94, 813 A.2d 342. "Put another way, because the State touted [the cousin's] statement as trustworthy in its case against [the cousin], the court should have considered the State's reliance on [the cousin's] statement as a factor with respect to the trustworthiness of [his] statement." *Id.* at 594, 813 A.2d 342. Nevertheless, we noted:

In reaching our conclusion, we are mindful that "the exclusion of a statement exculpating an accused could result

in an erroneous conviction." [State v.] Anderson [141 Wis.2d 653], 416 N.W.2d [276,] at 280 [(1987)]. Moreover, given a defendant's constitutional right to present a defense, id., 416 N.W.2d at 279, a defendant should not be subjected "to an insurmountable evidentiary hurdle" to obtain admissibility of a hearsay statement that is central to the defense and has been sufficiently corroborated. Id., 416 N.W.2d at 280. Ultimately, it is for the fact finder to assess the veracity of the declaration. Id.

Roebuck, 148 Md.App. at 594, 813 A.2d 342.

The next year, in Stewart, supra, 151 Md.App. at 427, 827 A.2d 850, we reviewed the existing case law surrounding Rule 5–804(b)(3) in the context of a father's statement allegedly exculpating his son, when both the father and the son were charged, but tried separately, with murder and assault. The trial court ruled that the father's statement was not a declaration against penal interest, and thus inadmissible under Rule 5–804(b)(3). Id. at 446, 827 A.2d 850. We noted that the case was "akin" to Gray and Roebuck, but that the errors that led to reversals in those cases were not present because the court did not "usurp[ ] the jury's function in assessing credibility of the 'relator' of the declaration against penal interest[ ]" or "erroneously overlook[ ] the corroboration of [Roebuck's cousin's] declaration, including the State's own use of [Roebuck's cousin's] declaration at [his] murder trial." Id. at 453–54, 827 A.2d 850. We recognized that there was "a 'specific concern' that 'the accused or the declarant, or both, may have a motive to fabricate the statement.' " Id. at 454, 827 A.2d 850 (citation omitted). Relying on United States v. Camacho, 163 F.Supp.2d 287 (S.D.N.Y.2001), and other illustrative federal cases that focused on the relationship between the declarant and the accused in the context of trustworthiness, we believed that "in a murder case in which a father and son are both implicated, the close familial bond of father and son raises the specter that [the father] had a motive to fabricate to protect his son." Id. at 454–55, 827 A.2d 850 (citing United States v. Desena, 260 F.3d 150, 158–59 (2d. Cir.2001); United States v. Duke, 255 F.3d 656, 658–59 (8th Cir.2001); United States v. Doyle, 130 F.3d 523, 544 (2d Cir.1997); United States v.

*Silverstein,* 732 F.2d 1338, 1346 (7th Cir.1984); *United States v. Katsougrakis,* 715 F.2d 769, 777–78 (2d Cir.1983)).

Moreover, "when 'a statement directly implicates the declarant, *and no one else,*' that circumstance is a factor 'in favor of its reliability.'" *Id.* at 455, 827 A.2d 850 (quoting *Camacho,* 163 F.Supp.2d at 305) (emphasis in *Stewart*). In *Stewart,* 151 Md.App. at 455, 827 A.2d 850, the father "sought to exculpate both himself *and* his son; he stated that he ... committed the crimes, but claimed, in effect, that he acted in self-defense." We also noted that "the consistency of a declarant's statement is an important factor to consider," and there were several inconsistencies in the father's various accounts, causing the trial court to be skeptical of the trustworthiness of the declarations. *Id.* (citations omitted).

We held that the trial court properly considered the circumstances surrounding the trustworthiness of the father's statement, recognizing that the statements were made when he knew his son was sought by police or had been arrested. *Id.* The trial court found the father's account, in which he assumed full responsibility for, and acted alone in, three altercations, as "entirely implausible," in light of the father either seriously wounding or killing three people almost half his age. *Id.* at 456, 827 A.2d 850. The trial court did not credit the father's assertion that he did not know the three victims. *Id.*

The father also suggested that he acted in self-defense, which we deemed to render his statements as "self-exculpating," not self-incriminating. *Id.* As such, the statements were "less trustworthy within the meaning of the hearsay exception in [Rule 5–804(b)(3) ]." Additionally, the court had already heard a majority of the evidence, which "simply did not corroborate [the father's] assertions that he acted alone...." *Id.* Finally, even if the evidence was unclear as to whether the father or the son shot the gun, the father's statements were not exculpatory as to the son based on principles of accomplice liability, which the State advanced and supported with evidence. *Id.* Therefore, we declined to second guess the trial court's determination that the father's declarations attempting to exculpate his son were untrustworthy. *Id.*

We note that in *Colkley v. State,* 204 Md.App. 593, 606, 42 A.3d 646 (2012), Judge Moylan, writing for this Court, recently took issue with the "zeal with which both [defendants] brandish[ed] the adjective 'exculpatory.' " He reiterated that exculpatory evidence is that which is " 'capable of clearing or tending to clear the accused of guilt[.]' " *Id.* at 607, 42 A.3d 646 (quoting *State v. Giles,* 239 Md. 458, 469, 212 A.2d 101 (1965)). In *Giles,* the Court of Appeals cited an Oklahoma case for a definition of "exculpatory," which provided:

> *"Exculpatory" is* defined in Webster's Dictionary as *"clearing or tending to clear from alleged faith or guilt."* The various jurisdictions have adhered basically to this definition. The State of Texas in the case of *Moore v. State,* 124 Tex.Cr.M. 97, [100,] 60 S.W.2d 453[, 455 (1933) ], said that "Exculpatory" means "clearing, or tending to clear, from alleged fault or guilt; excusing." In the case of *State v. Langdon,* 46 N.M. 277, [279,] 127 P.2d 875[, 876 (1942) ], [the Supreme Court of New Mexico] used the following language: "The word 'exculpate' is employed in the sense of excuse or justification."

*Colkley,* 204 Md.App. at 607–08, 42 A.3d 646 (quoting *Dean v. State,* 381 P.2d 178, 181 (Okla.Crim.App.1963)) (emphasis in *Colkley* ).

Though not dispositive in that case, Judge Moylan elaborated:

> Our point is that all that is non-inculpatory is not thereby exculpatory, just as all that is non-exculpatory is not thereby inculpatory. The absence of a quality is not the same thing as the opposite of that quality. There is a wide "No Man's Land" of neutral connotation between the opposing verbal trench lines. The world is not necessarily black or white. In any event, this is nothing more than a passing observation on the uses and abuses of the language and an affirmation that things are sometimes gray.

*Colkley,* 204 Md.App. at 608, 42 A.3d 646.

Here, even though he suggested that he acted in self-defense in response to a man in the apartment "reaching for

something" and that "Darren Johnson" caused the initial altercation and later kidnapping, Mr. Jones's statement was arguably inculpatory, and thus against his penal interest. He placed himself at the scene of a home invasion, which involved being in proximity to illegal drugs and collecting a debt owed to "Darren Johnson" for a drug deal. He also admitted carrying and discharging a handgun in a residence. It is unclear whether a reasonable person in Mr. Jones's position would have perceived his statement to have "so tended to subject [him or her] to civil or criminal liability" under Rule 5–804(b)(3). Nevertheless, Mr. Jones indicated that appellant was absent and did not participate in the ordeal. Therefore, for the sake of argument, and as it does not affect our holding, we accept appellant's contention that Mr. Jones's statement inculpated himself and "Darren Johnson," and exculpated appellant for the charged crimes. Still, we heed Judge Moylan's warning and point out that just because a statement is inculpatory of one person, or several people, does not mean the statement is exculpatory of others.

We discern that the circuit court properly granted the State's motion in limine, excluding Mr. Jones's statement at defense counsel's office, as the circuit court's findings of fact were not clearly erroneous and its ultimate decision to exclude the statement based on insufficient indicia of reliability was not an abuse of discretion. *Stewart*, 151 Md.App. at 447, 827 A.2d 850 (citations omitted). The parties do not dispute that Mr. Jones was unavailable, given his counsel's indication that he would refuse to testify at appellant's trial and invoke his Fifth Amendment privilege against self-incrimination. Additionally, we note that there are no Confrontation Clause issues because appellant, himself, sought admission of the out-of-court statement. *Gray*, 368 Md. at 538, 796 A.2d 697.

The circuit court concluded that the statement did not so tend to subject Mr. Jones to criminal or civil liability. Despite the conclusion in Mr. Jones's statement that he "knew" that he was "making a statement against [his] penal interest which could be used against [him]," we cannot hold that the court was clearly erroneous. As mentioned, the court emphasized

the unreliability, untrustworthiness, and sheer lack of corroboration surrounding Mr. Jones's statement. In that regard, Mr. Jones's self-defense claim weighs against his statement being trustworthy and exhibiting necessary corroboration. *Stewart,* 151 Md.App. at 455, 827 A.2d 850(citing *Camacho,* 163 F.Supp.2d at 305(a declarant who does not fully inculpate himself or herself, but rather exculpates both himself or herself *and* the defendant, weighs against reliability)).

Mr. Jones's statement also suggested that another person, "Darren Johnson," was criminally liable. This Court has held that "when 'a statement directly inculpates the declarant, *and no one else,*' that circumstance is a factor 'in favor of its reliability.'" *Id.* (quoting *Camacho,* 163 F.Supp.2d at 305) (emphasis in *Stewart*). Mr. Jones's suggestion that a third person was criminally culpable does not weigh as heavily in favor of reliability and trustworthiness, but rather the deflection of culpability weighs against reliability and trustworthiness.

Appellant posits that the circuit court failed to consider the content of the statement. In *Roebuck, supra,* 148 Md.App. at 581, 813 A.2d 342, we stated that a court evaluating a declaration against penal interest must "carefully consider the content of the statement in light of all known and relevant circumstances surrounding the making of the statement and all relevant information concerning the declarant[.]" We believe the circuit court did just that. According to appellant, the court concluded that the statement concerned "Darren Johnson's" presence in the apartment and his decision to force two individuals into the van, with appellant's absence being collateral. Appellant points out that he sought admission of the entire statement, and asserts that the circuit court only looked at the segments of the statement that mentioned appellant, finding those portions to be collateral to the general focus of the statement. We find no merit in appellant's argument because it is apparent that the circuit court properly found the entire statement to be unreliable, untrustworthy, lacking corroboration, and, thus, inadmissible. Moreover, it is apparent that the thrust of Mr. Jones's statement concerned

him and "Darren Johnson," with appellant's absence merely mentioned, almost in an *ad hoc* fashion. While not dispositive either way, this is certainly a consideration. *See Standifur*, 310 Md. at 15–16, 526 A.2d 955 (discussing collateral and noncollateral statements and inculpatory and exculpatory versions of both).

At bottom, the circuit court determined that Mr. Jones's statement to defense counsel lacked the required sufficient "indicia of reliability" and "particularized guarantees of trustworthiness" for the statement to be admissible pursuant to Rule 5–804(b)(3). *Stewart*, 151 Md.App. at 447, 827 A.2d 850 (citations omitted); *accord United States v. Thomas*, 919 F.2d 495, 498 (8th Cir.1990) (deceased co-defendant's telephone call to his counsel allegedly exculpating defendant not admissible statement against penal interest because, in addition to not tending to subject him to criminal liability, there were no "corroborating circumstances indicating the trustworthiness of the statement"); *United States v. Zirpolo*, 704 F.2d 23, 27 (1st Cir.1983) (exculpatory affidavit signed by former co-defendant who had pled guilty, but invoked Fifth Amendment privilege making him unavailable, not admissible as statement against penal interest because circumstances did not corroborate affidavit's trustworthiness). In addition to the statement including suggestions that Mr. Jones acted in self-defense, the court found a plethora of circumstances indicating that the statement was untrustworthy. Appellant brought Mr. Jones to defense counsel's office one day after the incident in the apartment, before either of the men had been arrested for the charged crimes. Appellant suggested that Mr. Jones wanted to make the statement, and appellant offered to pay for Mr. Jones's representation, albeit presumably by a different attorney. Mr. Jones stated that, at the time of the statement, he did not have anywhere to live other than with appellant. Furthermore, at the hearing on the State's motion in limine prior to appellant's trial, Mr. Jones refused to answer whether he gave the statement to protect appellant. Instead, Mr. Jones stated that he "ain't saying nothing." Still, Mr. Jones testified that the statement he made to defense counsel was

"not true" and that he "made up" the statement. Finally, though otherwise unsubstantiated, Mr. Jones's counsel advised the circuit court that Mr. Jones would not testify against appellant, despite the court's admonishments, because Mr. Jones "was terrified" of appellant.

 The statement is also clearly inconsistent with the statement of facts on which Mr. Jones pled guilty, where he inculpated appellant. On appeal, appellant posits that Mr. Jones's plea was an *Alford* plea. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An *Alford* plea is "a guilty plea containing a protestation of innocence," which "lies somewhere between a plea of guilty and a plea of *nolo contendere* [,]" where a "defendant does not contest or admit guilt." *Bishop v. State,* 417 Md. 1, 18–19, 7 A.3d 1074 (2010) (citations omitted). In its decision in *Alford,* 400 U.S. at 37, 91 S.Ct. 160, the Supreme Court ruled:

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he [or she] is unwilling or unable to admit his participation in the acts constituting the crime.

Appellant directs our attention to an excerpt from Mr. Jones's plea hearing. The excerpted colloquy occurred after the court asked Mr. Jones the appropriate litany of questions and the State presented the factual predicate for the plea, evidence that would have been produced at trial, including appellant's presence during the commission of the crimes. Mr. Jones's defense counsel also already indicated on behalf of his client that Mr. Jones had no additions or corrections to the factual predicate. Then, the following occurred:

> THE COURT: Okay. Are you pleading guilty to these offenses because you are guilty and for no other reason?
>
> [MR.] JONES: No other reason, Your Honor.
>
> [MR. JONES'S DEFENSE COUNSEL]: He's saying yes for no other reason. Yes.

THE COURT: You are pleading guilty—

[MR.] JONES: Yes, Your Honor.

THE COURT:—because you are guilty in this case?

[MR.] JONES: Yeah, basically, Your Honor.

THE COURT: All right. Has there been any question that you have of me?

[MR. JONES'S DEFENSE COUNSEL]: Any questions?

[MR.] JONES: No, Your Honor.

THE COURT: Has there been any advice that I've—I now direct to [Mr. Jones's Defense Counsel]. Has there [been] any advice that I've failed to make or failed to give him in this colloquy?

[MR. JONES'S DEFENSE COUNSEL]: No, Your Honor. I just want to make it clear when you asked him, are you pleading guilty, because you are guilty, and no other reason, I just want to make sure the only reason he said basically is because the plea agreement, but aside from the plea agreement, the reason why you're pleading guilty is you are guilty, correct?

[MR. JONES]: Yes.

As a result of the plea, the State recommended, and the Court imposed, a life sentence, with all but twenty-five years suspended. The State allowed Mr. Jones to file a motion for reconsideration to be held in abeyance and addressed at a later date. Based on the above, appellant posits that Mr. Jones's plea was an *Alford* plea, rather than a guilty plea, or at least some sort of "hybrid" of the two. We concur with appellant that Mr. Jones received a favorable plea bargain. However, a favorable plea bargain does not convert a guilty plea into an *Alford* plea, and we discern no error in the circuit court citing Mr. Jones's prior guilty plea as a factor in its consideration of the State's motion in limine in appellant's case. Moreover, the fact that Mr. Jones pled guilty based on a factual predicate that, in regard to appellant's presence and participation, was directly contrary to his statement to appellant's defense counsel was a logical and proper consideration

in the circuit court's determination as to indicia of reliability and trustworthiness.

We hold that the circuit complied with Rule 5–804(b)(3) and the applicable case law when it excluded Mr. Jones's statement to defense counsel, rightfully wary that certain "statements are suspect because of a long-standing concern . . . that a criminal defendant might get a pal to confess to the crime the defendant was accused of. . . ." *Stewart,* 151 Md.App. at 454–55, 827 A.2d 850 (citing *Silverstein,* 732 F.2d at 1346). It is evident that the court's decision relied on the complete dearth of indicia of reliability or corroborating evidence. Rather, there was a plethora of evidence that indicated that Mr. Jones's statement to appellant's defense counsel was unreliable, untrustworthy, uncorroborated, and, therefore, inadmissible as a statement against penal interest. The court did not clearly err in its factual determinations, and its ultimate decision that the statement was inadmissible was not an abuse of discretion.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**